WILLIAM SELKING, Appellant, *v.* LOUIS HEBEL, Respondent.

February 28, 1876.

1. In the absence of proof to the contrary, the laws of another State will be presumed to be the same as our own.

2. The record of an imperfectly acknowledged chattel mortgage imparts no notice.

3. The purchaser of a chattel from a mortgagor in possession will hold against a mortgage not sufficiently acknowledged, though it be copied and indexed in the office of the recorder of deeds, and though the purchaser have actual knowledge of its existence.

4. The value of a chattel in dispute being admitted by the pleadings, nothing appears to warrant an interference with the discretion of the trial court in refusing to allow an amendment in that particular at the close of plaintiff's case.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Finkelnburg & Rassieur*, for appellant, cited: Story on Part. (6th ed.), sec. 94; Hill. on Mort. (4th ed.) 350, 351; Smith *v.* Hutching, 30 Mo. 380; Fairbanks *v.* Bloomfield, 5 Duer (N.Y.), 434, 440; Thornton *v.* Davenport, 2 Ill. 296; Edwards *v.* Harbens, 2 T. R. 587; Hathorn *v.* Lewis, 22 Ill. 395; Lewis *v.* Palmer, 28 N.Y. 272; Allen *v.* McCalla, 25 Iowa, 465; Schouler on Pers. Prop. (ed. 1873) 542; Ill. Stat. 1858, p. 873.

*Hill & Bowman, Slayback & Haeussler*, for respondent.

BAKEWELL, J., delivered the opinion of the court.

This was an action of replevin brought by appellant against respondent for the possession of a large musical instrument called an "orchestrion." The property was taken from defendant, under the statute, and delivered to appellant. Its value is stated in the petition and accompanying affidavit to have been $2,100.

It appears that plaintiff, residing in Indianapolis, Indiana, had the orchestrion in his possession on May 14, 1873, and at that date sold the same to Kestring & Kelly, a firm that had recently removed from Indianapolis to Quincy, Illinois, where they were carrying on business at the time of the sale. The sale was made with knowledge that the vendees would remove the orchestrion to their saloon in Quincy. It was sold for $2,100, of which $1,000 was paid in cash, and for the unpaid balance the notes of the purchasers were taken; one note at sixty days for $100, and five notes of $200 each, payable respectively in three, four, five, six, and

seven months, secured by a chattel mortgage on the instrument. The mortgage stipulated that the mortgagor might retain possession until default, in which event the mortgagee might seize the mortgaged property, wherever found. The mortgage also provides that the mortgagee may at once take possession if the orchestrion is removed without his consent. The mortgage is under seal, and signed "Kestring & Kelly, by Edward Kelly," who was one of the firm. There is attached to the mortgage a certificate of acknowledgment before a notary of Marion county, Indiana, the place in which it was executed, and in which the mortgagee resided, setting forth that, on the day named, "before me personally appeared the firm of Kestring & Kelly, by Edward Kelly, to me well known, and acknowledged the execution of the foregoing instrument as their free act and deed." The orchestrion was at once delivered to Kestring & Kelly, in Quincy, and the mortgage at the same time recorded in the county in which Quincy is situated. None of the notes were paid, and the orchestrion was, in October, 1873, sold to defendant by Kestring & Kelly, and delivered by them to him at St. Louis, of which sale and removal plaintiff had no knowledge at the time. Defendant paid $1,000 for the instrument, but, on the trial, swears " it was worth just nothing; I would not have it back for anything." Before purchasing, defendant sent a telegram to Indianapolis, to one Renman who kept a saloon next door to plaintiff, and whose address plaintiff got from Kestring & Kelly, asking, "How much claim do you hold on the orchestrion?" Plaintiff swears that this telegram was at once communicated to him, and that he immediately answered, both by telegraph and mail, to defendant's correct address in St. Louis, saying in his telegram that he had a mortgage for $1,100, and giving full particulars by letter. Defendant swears that he did not receive either letter or dispatch. After the lapse of two weeks, plaintiff went to St. Louis, and found the orchestrion in defendant's saloon,

who at first said that he had imported the orchestrion from Germany at a cost of $4,000 ; but, on being informed who plaintiff was, and what claims he made to the orchestrion, defendant at once told him that he had bought the orchestrion as already stated, and promised to pay $1,000, as a compromise, in full discharge of plaintiff's mortgage.    This he subsequently refused to do, and this suit was commenced.

On the trial, plaintiff offered additional evidence to show actual knowledge, on part of defendant, of plaintiff's mortgage, before purchase ; but the court refused to admit evidence on that point, on the ground that such knowledge on defendant's part was immaterial.

Plaintiff then asked leave to amend his petition as to the value of the property, which the court also refused.

The court, at the close of plaintiff's case, instructed the jury that, " on the evidence, plaintiff is not entitled to recover, and they will assess the value of the property at the sum of $2,100, as admitted by the pleadings, and assess one cent damages for the taking and detention thereof."

To all these rulings plaintiff excepted.

The jury rendered a verdict in accordance with the instruction.   A *remittitur* was entered of $1,000, and judgment entered against plaintiff for $1,000.

After moving for a new trial, which motion was overruled, plaintiff brings the case here by appeal.

The first question that presents itself for our determination is as to the action of the court below in refusing to allow evidence of actual notice of the alleged mortgage.

It does not appear that any evidence was introduced on the trial as to the law of Illinois in regard to acknowledgments of deeds.   Of the laws of our sister States, courts in Missouri do not take judicial notice.   In the absence of proof to the contrary, they will be presumed to be the same as our own. . The Indiana statutes in regard to acknowledgments and chattel mortgages were introduced, and also Gross' Statutes of Illinois, page 67, section 3, in regard

to the record of chattel mortgages. Nothing, however, appeared from which the learned judge below could determine the sufficiency of the acknowledgment under the Illinois law. He might well, therefore, presume it to be no compliance with the statute of Illinois, as it would have been clearly bad in Missouri, and, indeed, on the argument before us it seems to have been conceded that the mortgage was not certified as required by the law of Illinois. The record of a chattel mortgage insufficiently acknowledged imparts no constructive notice, even in the State and county in which it is made. We consider that the case is as if this mortgage had never been recorded at all. But the purchaser of personal property from a mortgagor in possession will hold against a prior unrecorded mortgage, even though he had actual knowledge of it. *Bryson* v. *Penix*, 18 Mo. 13. The court below, therefore, committed no error in excluding evidence of actual notice to defendant of this mortgage.

The value of the property was admitted by the pleadings, and it was within the discretion of the trial court to refuse to allow an amendment in this respect, at the close of plaintiff's case. We see nothing to warrant an interference with the exercise of that discretion in this instance. In this view of the case there was, therefore, no error in the instructions given; and, no error of any kind appearing on the record, the judgment of the Circuit Court must be affirmed. The other judges concur.