GEORGE SWIGGETT v. H. T. DODSON, et al.

1. CHATTEL MORTGAGE — *Change of Possession, Not Actual and Continued.* Where a chattel mortgage is executed and the mortgagee takes the actual possession of the mortgaged property, and afterward places it in the actual possession, care, custody and control of the mortgagor, as the agent and clerk of the mortgagee, *held,* that there has not been such "an actual and continued change of possession" of the mortgaged property as is required by statute to support the validity of a chattel mortgage as against the creditors of the mortgagor, and that the mortgage in such a case would be void where its validity depended upon a change of the possession of the mortgaged property.

2. —————— *When Valid.* A chattel mortgage becomes valid as against the creditors of the mortgagor only when the mortgagee takes the actual possession of the mortgaged property, or when the mortgage or a copy thereof is deposited with the register of deeds.

3. —————— *Valid for Only One Year.* A chattel mortgage deposited with the register of deeds remains valid as against creditors of the mortgagor for only one year, unless within thirty days prior to the termination of the year a renewal affidavit is filed with the register of deeds, or unless the mortgagee has taken the actual possession of the mortgaged property.

4. —————— *Void Against Creditors of Mortgagor.* Where a chattel mortgage is deposited with the register of deeds, and at the expiration of one year thereafter the mortgagor is in the actual possession and control of the mortgaged property and no renewal affidavit has been filed with the register of deeds, *held,* that the mortgage is void as against the creditors of the mortgagor, although they may have knowledge that the mortgage has not been fully discharged or satisfied, and may know that the mortgagor holds the possession of the mortgaged property as the agent of the mortgagee.

## *Error from Butler District Court.*

ON November 1, 1884, and prior thereto, Andrew Swiggett was engaged in business in the village of Towanda, Butler county, Kansas, as a retail dealer in general merchandise. He was also largely indebted to various persons and firms, including George Swiggett, his father, and the two firms of W. W. Johnston & Co., of Wichita, and Patterson, Bell & Co., of Kansas City, Mo. On that day, by virtue of an instrument in writing, executed by himself and his father and the two firms aforesaid, he conveyed all his property kept and used in his said business to the aforesaid firms to be again sold by them at retail in the ordinary course of trade, and the proceeds thereof to be applied by them in a particular way for the payments of his debts to his father and to them and to other creditors. Immediately thereafter the aforesaid firms took the possession of the property and put Charles Johnston, as their representative, in the possession thereof, and also employed Andrew Swiggett as a clerk, and the business was carried on by Charles Johnston and Andrew Swiggett in the same manner as it had been carried on before. About seventeen

days afterward Charles Johnston retired from the business
and surrendered his possession of the property to Percy Long-
ley, another representative of the above-mentioned firms,
and the business was still carried on in the same manner as
it had been carried on before. On February 11, 1885, the
aforesaid instrument in writing was deposited with the register
of deeds as a chattel mortgage. On February 12, 1885, Long-
ley retired from the business and Andrew Swiggett was placed
in the entire possession and control of the property, and from
that time on he had the sole care, custody, management and
control of the property as the agent and general manager of
the aforesaid firms and their assignee, he having given bond
to them for the faithful discharge of his duties as such agent
and general manager, and the business was carried on in pre-
cisely the same manner as it had been carried on prior to the
transfer of the goods and business by Andrew Swiggett to
said firms. The goods remained in the same building; no
signs were changed; the sign on the outside of the building,
reading, "A. Swiggett, cheap cash corner," still remained, and
this was the only sign on the building; no change was made
in the books; the goods were still sold at retail in the ordi-
nary course of trade, in the same manner that they had previ-
ously been sold, and precisely as though Andrew Swiggett
had been the sole and actual owner thereof; no change was
made in the manner of keeping the books, and when new
goods were purchased they were purchased in the name of
Andrew Swiggett, and paid for in his name, and they were
intermingled with the old stock of goods just as new goods
were intermingled with the old stock prior to the execution
of the said written instrument. About December 31, 1885,
the said firms assigned the aforesaid instrument to George
Swiggett; but George Swiggett never took the possession or
the control of the goods, and the business was carried on just
as it had been before. On February 11, 1886, a year had
elapsed since the filing of the aforesaid instrument, and no
affidavit of the kind required by § 11 of the act relating to
mortgages (Comp. Laws of 1885, ch. 68, art. 2, § 11) had

been filed, nor was such an affidavit ever filed.   On April 10, 1886, H. T. Dodson, as the sheriff of Butler county, levied an execution upon a portion of said goods, which said execution was issued in an action in which Morris Barbee and Martin Barbee, partners as Barbee Bros., were the judgment creditors, and Andrew Swiggett was the judgment debtor, and Dodson, together with E. T. Beeson as his assistant, separated the goods levied upon from the others, and took the possession of those levied on.   On April 14, 1886, *George Swiggett* commenced this present action, which is an action of replevin, against *H. T. Dodson* and *E. T. Beeson*, to recover the aforesaid goods levied upon by Dodson.   On September 28, 1886, the case was tried before the court and a jury, and the plaintiff introduced evidence tending to show the foregoing facts, and rested his case; whereupon the defendants demurred to the evidence upon the ground that it did not prove facts sufficient to constitute a cause of action, and the court sustained the demurrer and rendered judgment in favor of the defendants and against the plaintiff for the return of the property, or if that could not be had, then for the value thereof, to wit, $1,604.58.   To reverse this judgment, *George Swiggett* brings the case to this court, making *Dodson* and *Beeson* defendants in error.

*C. A. Leland*, for plaintiff in error.

*J. K. Cubbison*, and *E. D. Stratford*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: The first and principal question presented to this court is, whether the court below erred or not in sustaining a demurrer to the plaintiff's evidence.   And this question depends for its solution upon the further question whether a certain instrument in writing executed by Andrew Swiggett and his father George Swiggett, and the two firms of W. W. Johnston & Co., of Wichita, and Patterson, Bell & Co. of Kansas City, Mo., purporting to transfer to the aforesaid firms Andrew Swiggett's general stock of merchandise, is a valid instrument or not.   If this instrument was valid on April 10,

45 — 38 KAS.

1886, when the defendants in this action took the possession of the goods in controversy, the goods supposed to be conveyed by this instrument, then the ruling of the court below was erroneous; but if the instrument was void at that time, then the ruling of the court below is correct. The parties to this action treat the instrument as though it were a chattel mortgage; and probably they correctly so treat it. If it were considered as an assignment for the benefit of creditors, then it would be void under the provisions of the statutes relating to voluntary assignments for the benefit of creditors. (Comp. Laws of 1885, ch. 6.) It would be void in that case, for the reason that it was not executed in accordance with the provisions of such statutes. If, however, it be considered as a chattel mortgage, it may be valid or it may be void, depending upon the other circumstances of this case. It was executed on November 1, 1884; the said two firms took the possession of the property purporting to be transferred by it, about November 3, 1884, and the instrument was deposited with the register of deeds on February 11, 1885. If the instrument be treated as a chattel mortgage, executed in good faith — and we shall so treat it — then it became valid as soon as the two firms aforesaid obtained the possession of the goods under it. (*Cameron v. Marvin*, 26 Kas. 612, 625, and cases there cited; *Dolan v. Van Demark*, 35 id. 305, 308, and cases there cited; *Isenberg v. Fansler*, 36 id. 402.) And although Andrew Swiggett afterward, and on February 12, 1885, took the actual and the absolute possession of the property, and continued to hold the possession thereof until April 10, 1886, when the defendants in this action took the possession thereof, still the instrument remained valid up to February 11, 1886; for on February 11, 1885, the day before Andrew Swiggett took such possession, the instrument was deposited with the register of deeds as a chattel mortgage. (Comp. Laws of 1885, ch. 68, §§ 9, 11.) The real question then for us to consider is, whether the aforesaid instrument was valid or void after February 11, 1886, and up to and including April 10, 1886, when the defendants in this action levied upon and took the possession of

.he property.   There is no claim, nor even a pretense, that any renewal affidavit was ever filed for the purpose of keeping the instrument alive as a chattel mortgage as required by §11 of the act relating to mortgages, (Comp. Laws of 1885, ch. 68, §11,) nor any claim that any evidence was introduced tending to show that the Barbee Brothers, the judgment creditors, at whose instance the defendants levied upon and took the possession of the goods in controversy, had any knowledge that the debts for the security of which the instrument was executed, had not been paid or satisfied, or that the plaintiff had or claimed to have any interest in or possession of the goods. Of course if the instrument was a chattel mortgage — and we shall treat it as such — and if the holder of the mortgage, the plaintiff in this action, had the actual possession of the mortgaged property on April 10, 1886, when the defendants in this action took the possession thereof, then the instrument was valid, and the holder thereof, the plaintiff, had a right to the property, and the court below erred in sustaining the demurrer to his evidence. (See the cases above cited, and also *Dayton v. Savings Bank,* 23 Kas. 421.)   But was the holder of the chattel mortgage, the plaintiff in this action, George Swiggett, in the actual possession of the supposed mortgaged property at that time ? Certainly Andrew Swiggett was in the actual possession of the property at that time; and George Swiggett was not in the possession thereof at all except by virtue of Andrew Swiggett's possession.   But as claimed, Andrew Swiggett was George Swiggett's agent, and as a general rule the actual possession of property by an agent is constructively the actual possession of the property by the principal.   But this rule cannot always apply.   It has its exceptions.   It does not apply where personal property is mortgaged and the mortgagee permits the mortgagor, who is in equity still the owner of the property, although the legal title thereto has passed from him to the mortgagee, to retain the possession of the property, or afterward to take the possession thereof as the agent of the mortgagee, and especially not where the mortgagor holds the

2. Chattel mortgage, when valid.

property and uses it as his own, and where there is nothing in or about the property or appertaining thereto, to inform other persons that any change of interest in or to the property has taken place. (*McCarthy v. Grace*, 23 Minn. 182; *Doyle v. Stevens*, 4 Mich. 87; *Brunswick v. McClay*, 7 Neb. 137; *Grant v. Lewis*, 14 Wis. 487; *Menzies v. Dodd*, 19 id. 364; Sch. Per. Prop. 544.) Under the statutes a chattel mortgage deposited with the register of deeds continues in force only for one year, unless a renewal affidavit is filed with the register of deeds, or unless "an actual and continued change of possession" of the mortgaged property takes place. Now "an actual and continued change of possession" does not take place unless the *actual* possession passes *from* the mortgagor and does not return to him. Of course, under the rules of agency a principal may constructively have an actual possession of property in the actual possession only of his agent, and generally such an actual possession would be sufficient; but it is not sufficient in cases of chattel mortgages where the agent holding the property is also the mortgagor, and where the principal is also the mortgagee, and where there is nothing to show and it is not shown that the agent and mortgagor is not the full, complete and absolute owner of the mortgaged property. The statutes require not only a *change*, but a *continued change* of the possession of the property. But if the mortgagor holds the *actual* possession, whether as agent or otherwise, there cannot be any such continued *change* of possession. A person having the actual possession of property by himself has the entire possession; and there cannot well be a stronger possession, nor much room for another actual possession. An actual possession by another, as by an agent, is after all only a constructive possession; and that kind of possession, where the person having it is the mortgagor of the property, does not meet the requirements of the statutes. Of course the burden of proof in this case rested upon the plaintiff to show that the *actual* possession of the property was in himself, and *not* in the mortgagor. The burden of

3. Chattel mortgage, valid for one year.

1. Chattel mortgage—change of possession, not actual and continued.

proof is generally upon the plaintiff, in replevin, as this case is. And it is also upon him from the nature of the case. Whenever a person claims under a chattel mortgage, the burden of proof is upon him to show such an *actual* and *continued change* of possession, or other facts as would render the mortgage valid. (*McCarthy v. Grace*, 23 Minn. 182.) And a constructive possession in such a case would not answer the purpose of an actual possession. (*Crandall v. Brown*, 25 N. Y. Su. Ct. [18 Hun] 461.) We think the court below did not err in sustaining the demurrer to the plaintiff's evidence.

But it is claimed by the plaintiff that the court below erred in excluding certain evidence. Andrew Swiggett was introduced by the plaintiff as a witness; the plaintiff's counsel examined him with reference to various matters, and, so far as it is necessary to quote, the record shows as follows:

"Q. I would ask whether or not the representatives of Barbee Brothers, the execution creditors in this case, have not been duly cognizant of all these steps as they have been taken, of your own knowledge, whether you have not informed them?

"Defendants object as irrelevant, immaterial and incompetent. Objection sustained, to which the plaintiff excepts.

"Q. I would ask whether or not you are acquainted with Ed. McLean? A. I am.

"Q. I would ask whether or not he was here and talked with you concerning the rights and claims of the Barbee Brothers, the plaintiffs in this execution, after the time this triple agreement had been made?

"Defendants object as immaterial and irrelevant. Objection sustained, to which plaintiff excepts."

The record also shows as follows:

"I [the plaintiff's counsel] offer to prove that I, as attorney for George Swiggett, notified the agent and also the attorney of the Barbee Brothers that Patterson, Bell & Company and W. W. Johnston & Company desired to retain Swiggett—Andy—as their clerk, or agent, and wished him to give bond for the performance of his duties as such agent, and told them, that is, the agents of Barbee Brothers, that if they didn't like that arrangement 'now is the time to kick, if at all,' and they didn't, and made no objections to his giving bond and acting as such agent.

"Defendants object to the evidence. Objection sustained, and exception noted by plaintiff to the ruling of the court."

Who the supposed "representatives of Barbee Brothers" were is not shown, but probably they were the defendants in this action, the officer and his assistant, who levied upon and took the possession of the goods in controversy. Also, who Ed. McLean was, or why the defendants in this action should be bound by what he said, is not shown. Also, who the agent, or agents, and the attorney of Barbee Brothers were, at a time more than one year before this action was commenced, and prior to the time when Andrew Swiggett took the possession of the goods in controversy as the agent and clerk of the two firms of Patterson, Bell & Co. and W. W. Johnston & Co., and at a time when the supposed chattel mortgage was unquestionably valid, is not shown. And what right any of the aforesaid representatives or agents, or the attorney of Barbee Brothers, had to bind Barbee Brothers by anything which any one of them may have said or done, is not shown. Neither is the nature or character of the supposed duties or powers of any one of these representatives, agents, or attorney, disclosed or made known. From anything appearing in the case, the supposed representatives or agents, or attorney of Barbee Brothers may have had no power to represent Barbee Brothers, or to bind them with reference to anything connected with the subject-matter of this action; and upon all these matters, as we have before stated, the plaintiff had the burden of proof. But why should the plaintiff offer evidence of any notice to the representatives, agents or attorney of Barbee Brothers, or of anything which the Barbee Brothers may have done or refrained from doing which might tend to show a notice or a waiver of notice prior to February 11, 1886? It is admitted that the chattel mortgage was valid up to and including that time, and Barbee Brothers are conclusively presumed to have known that fact, for the mortgage was filed with the register of deeds just one year before that time, which made it valid up to that time. Of course up to that time Barbee Brothers could not take

any action against the chattel mortgage, nor "kick" against its validity with any hope of success. And to prove any notice to Barbee Brothers, or to any one of their representatives, agents or attorney, prior to that time, would be folly in the extreme. The only notice to Barbee Brothers or to any representative or agent or attorney of theirs which could be of any value whatever, would be the affidavit provided for by § 11 of the act relating to mortgages, or some proper notice given to them or their duly-authorized agents subsequent to February 11, 1886, and such a notice as would in effect show them clearly that the chattel mortgage had not yet been paid, satisfied, or discharged. Now is there any claim that any such notice as this was ever given to Barbee Brothers or to any representative, agent or attorney of theirs who had any authority from Barbee Brothers to receive any such notice? Certainly not, unless it was the supposed notice to the aforesaid "representatives of Barbee Brothers." Now as before stated, we suppose that "the representatives of Barbee Brothers" who are claimed to have had notice of the plaintiff's rights were the officer and his assistant who levied upon and took the possession of the goods in controversy, and if so, then, according to the case of *McCarthy v. Grace*, 23 Minn. 183, the notice was not sufficient; for, according to that case, notice to the officer is not notice to the levying creditor. (See also *Stowe v. Meserve*, 13 N. H. 46.) But is not the mortgage void, even if all the parties, including the defendants and the Barbee Brothers, and all their representatives, agents and attorneys, had notice of the existence of the mortgage, and of all the rights which the plaintiff claims to have had under it? Sections 9 and 11, of the act relating to mortgages, provide among other things as follows:

"SEC. 9. Every mortgage, or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy

thereof, shall be forthwith deposited in the office of the register of deeds."

"SEC. 11. Every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year after the filing thereof, unless a renewal affidavit is filed."

Of course a subsequent purchaser or mortgagee cannot, "in good faith," be such so as to defeat or avoid a prior chattel mortgage, unless he becomes such without notice of the existence of such mortgage, and hence a subsequent purchaser or mortgagee is bound by any knowledge which he may have concerning a prior chattel mortgage. (*Ament v. Greer*, 37 Kas. 648; same case, 16 Pac. Rep. 102.) Whether this would also be true with respect to creditors who might become such with knowledge of the existence of a prior chattel mortgage, it is unnecessary now to decide, yet the great weight of authority under statutes similar to ours, would seem to be the other way. And certainly in all cases where the mortgagor is in the possession of the mortgaged property, and where the mortgagee has failed to file his mortgage or a renewal affidavit with the register of deeds, and where creditors have become such without any knowledge of the existence of a prior valid chattel mortgage, the authorities are almost, if not entirely, unanimous in declaring, under statutes similar to ours, that the mortgage is wholly and entirely void; and this although before such creditors have attempted to enforce their claims, or before they have attempted by execution or attachment levy to obtain any specific lien upon the mortgaged property, such creditors have received full and complete knowledge of the mortgage and of the mortgagor's claims, and that the mortgage has not yet been satisfied or discharged. (*Trust Co. v. Hendrickson*, 25 Barb. 484; *Stevens v. B. & N. Y. C. Rld. Co.*, 31 id. 590; *Williamson v. N. J. S. Rld. Co.*, 29 N. J. Eq. 312, 336; *Sayre v. Hewes*, 32 id. 652, 656; *Denny v. Lincoln*, 13 Met. 200; *Travis v. Bishop*, 13 id. 304; *Bingham v. Jordan*, 1 Allen, [Mass.] 373; *Bryson v. Penix*, 18 Mo. 13; *Bevans v. Bolton*,

4. Chattel mortgage, void against creditors of mortgagor.

31 id. 437; *Selking v. Hebel*, 1 Mo. App. 340; *Rich v. Roberts*, 48 Me. 548; *Sheldon v. Conner*, 48 id. 584; *Lockwood v. Slevin*, 26 Ind. 124; *Gassner v. Patterson*, 23 Cal. 299; *Frank v. Miner*, 5 Ill. 444; *Sage v. Browning*, 51 id. 217; *Lemen v. Robinson*, 59 id. 115; *McDowell v. Stewart*, 83 id. 538; Jones on Chattel Mortgages, §§ 314–318, and cases there cited.) The foregoing authorities merely proclaim the doctrine that the statutes with reference to the subject now under consideration mean what they say. Our statute says that the mortgage "shall be absolutely void as against the creditors of the mortgagor," or "shall be void as against the creditors of the person making the same," unless the statute is complied with, and we think this statute means what it says. We think the mortgage in this case was void after February 11, 1886, without reference to any knowledge of or notice to the Barbee Brothers or their representatives, agents or attorneys; and hence for this reason as well as for others, the court below did not err in excluding the aforesaid evidence.

The plaintiff also claims that the court below erred in rendering judgment for $1,604.58, the value of the property; First, because there was no evidence of the value of the property; second, because the judgment of Barbee Brothers, with interest and costs, would not amount to that sum. Now the plaintiff admitted and alleged in his petition that the property was worth $2,797, and swore in his replevin affidavit that the property was worth that amount; hence it is immaterial whether there was any evidence of the value of the property or not, for the court below did not render judgment for as much as the plaintiff admitted the property to be worth.

The other point is also immaterial and unimportant under the facts of this case, and besides we are inclined to think that the judgment of the court below was correct. (*Hall v. Jenness*, 6 Kas. 356, 365, 366.) This case was tried by the defendants upon the theory that the chattel mortgage was wholly and absolutely void as to them, and such was the case, and under that theory it is proper for them to account to Andrew Swiggett, from whom they took the goods, for any

surplus remaining after paying Barbee Brothers' judgment. If such surplus, however, really belongs to George Swiggett, Andrew's father, Andrew can pay it to George, or permit the sheriff, Dodson, the principal defendant in this case, to do so. It will be the duty of the sheriff to pay it to whomsoever it may belong. If the evidence clearly showed that the judgment of the court below was erroneous in this respect, we could order a modification of the judgment without ordering a new trial, but the evidence does not clearly so show.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

JOHNSTON, J.: In my view, there was testimony tending to establish that there was an immediate delivery of the mortgaged property and which was followed by an actual and continued change of possession, and therefore the case should not have been taken from the jury. I also think the court erred in excluding testimony offered by plaintiff.