## THE STANDARD IMPLEMENT COMPANY v. THE PARLIN & ORENDORFF COMPANY.

1. ATTACHMENT—*Intervener—Burden of Proof.* Where a person other than the defendant files a motion to discharge property from the levy of an attachment, upon the ground that he is the owner thereof, or has a special interest therein entitling him to the possession of the same, and it is not alleged in the motion that the affidavit for the attachment is untrue, or that the proceedings are in any way irregular, the burden is upon such person or claimant to prove the allegations of his motion, and the court hearing the same may properly require such claimant to first produce his evidence.

2. CHATTEL MORTGAGE, *When Deemed Filed—Rights of Creditors.* Where a person, without the knowledge of the mortgagee, executes and sends by mail, on Saturday, April 13, 1889, a chattel mortgage upon his stock of goods and merchandise to a register of deeds, with direction to "keep inclosed in your possession," and the mortgagee, on the next day, Sunday, April 14, calls upon the register of deeds outside of his office and obtains the chattel mortgage, and then accepts the same; and thereupon redelivers the mortgage to the register of deeds, requests him to file it in his office, and pays him his fee therefor, and the register of deeds upon the following morning, at 7 o'clock, Monday, April 15, files the mortgage in his office, such mortgage, as against creditors of the mortgagor and subsequent purchasers, cannot be considered as deposited in the office of the register of deeds until Monday morning, when such register takes the mortgage to his office.

3. ———— *Void When.* A chattel mortgage not deposited in the office of the register of deeds is absolutely void as against an attaching creditor of the mortgagor, where the mortgagee is not in actual possession of the property mortgaged at the time of the levy of the attaching creditor. (Gen. Stat. of 1889, ¶ 3903; *Ramsey v. Glenn,* 33 Kas. 271; *Jewell v. Simpson,* 38 id. 362.)

4. EVIDENCE *Sustains Finding.* The evidence in the case examined, and *held* to be sufficient to sustain the finding made by the district judge in favor of the attaching creditor.

### Error from Barber District Court.

ON April 15, 1889, *The Parlin & Orendorff Company* commenced its action against one L. M. Spencer for a debt of $935.22, and caused an attachment to issue against his property. The order of attachment was delivered to George W.

Stevens, sheriff, at 12 o'clock and 15 minutes A. M. of that date, and executed at 4 o'clock and 30 minutes A. M. of the same day, by levying upon a large quantity of merchandise at Kiowa, Barber county, consisting of various kinds of machinery, agricultural implements, buggies, and wagons. On the 14th day of May, 1889, *The Standard Implement Company,* claiming the property, filed its motion to discharge the same, which came up for hearing on the 28th day of September, 1889, but during the hearing, by leave of court, the motion was withdrawn from the further consideration of the court, without prejudice, with leave to refile the same or other motions. Afterward, on the 22d day of October, 1889, the Standard Implement Company filed its motion to discharge the attached property, which motion was duly verified, and set forth that prior to and at the time of levying the writ of attachment it was the absolute owner of a part of the goods levied upon, and had a special ownership in the balance of the property by virtue of two chattel mortgages. On November 26, 1889, on leave of court, the Parlin & Orendorff Company filed a general denial to the Standard Implement Company's motion, and on the same day, on motion of the Standard Implement Company, the verification to the Parlin & Orendorff Company's answer was stricken out, no leave having been granted to verify. On the same day, November 26, 1889, the same being a regular judicial day of the November term, 1889, of said court, this cause came on for hearing upon the Standard Implement Company's motion; the Parlin & Orendorff Company demanded a jury, which was consented to by the Standard Implement Company; and thereupon a jury was impaneled and sworn to try the issues, at which time the court ruled that the burden of proof was upon the Standard Implement Company, to which ruling of court the Standard Implement Company excepted at the time; whereupon the cause proceeded to trial, and evidence was introduced by affidavits, record, and oral testimony, and the trial proceeded from day to day until all the evidence offered and allowed by the

court had been introduced. On the 4th day of December, 1889, the jury returned a verdict, finding generally for the Parlin & Orendorff Company. On the same day the Standard Implement Company filed its motion to vacate and set aside the verdict of the jury, and to render judgment in favor of the Standard Implement Company, discharging and dissolving the attachment, and releasing to them all the property attached in said cause, and especially the property as shown by "exhibit B" to the sheriff's return; and, during the argument of said motion, the court asked the attorneys for the Standard Implement Company whether they desired the court to pass upon all questions of fact, independent of the findings of the jury, and the attorneys informed the court that they so requested. Thereupon, the court passed upon the questions of fact, independent of the findings of the jury, and upon the merits of the motion and the merits of the case, independent of the findings of the jury, and in so doing considered the evidence introduced by the Standard Implement Company in support of its motion, and by the Parlin & Orendorff Company against the motion, and overruled the Standard Implement Company's motion, and sustained the attachment so far as the Standard Implement Company was concerned, to which ruling of the court the Standard Implement Company excepted at the time. On the 5th day of December, 1889, the Standary Implement Company filed its motion for a new trial, which motion was by the court overruled, and judgment rendered by the court overruling the Standard Implement Company's motion, and granting judgment in favor of the Parlin & Orendorff Company against the Standard Implement Company for the costs of the proceedings. On December 7, 1889, the court rendered judgment in favor of the Parlin & Orendorff Company against the defendant L. M. Spencer, for the amount claimed in plaintiff's petition, and sustained the attachment proceedings against the defendant. *The Standard Implement Company* excepted to the rulings and judgment of the court, and brings the case here.

*Overstreet & Denton,* and *R. O. Boggess,* for plaintiff in error:

The court erred in ruling that the burden of proof at the trial of the motion was upon the plaintiff in error. See *White-Crow v. White-Wing,* 3 Kas. 276; Civil Code, §§ 193, 344.

The first chattel mortgage—that is, the chattel mortgage for $3,000, which was delivered by J. N. Eastwood to J. H. Hall, register of deeds, with payment of fees for filing the same, and the request that the same be filed in the register's office—was notice to third parties of the existence of such mortgage from the time the same was so delivered to said register, on Sunday afternoon, April 14, 1889. If the register was not then at his office, the mortgagee could not deposit it in the office of the register; but he delivered it to the register, paid him the fee for filing it in his office, and requested him to file it. The mortgagee could do no more; if the register failed to do his duty, failed and neglected to file it in his office until the next morning, or the next month thereafter, the rights of the mortgagee could not be affected or prejudiced thereby, especially in a contest with simply another creditor. *Horsley v. Garth,* 44 Am. Dec. 394; *Mangold v. Barlow,* 48 id. 85; *Hoffman v. Mackall,* 64 id. 639; *Green v. Garrington,* 91 id. 106; *Throckmorton v. Price,* 91 id. 334.

The acts done on the morning of the 15th of April, before the levy of the attachment, under all the circumstances of the case, constituted in law a delivery of the possession of the store building and the stock of goods in question from L. M. Spencer to the Standard Implement Company. See *Stinson v. Clark,* 3 Allen, 340; *Swiggett v. Dodson,* 38 Kas. 702.

The plaintiff in error did all it reasonably could or ought to have done, at the time and place and under the existing circumstances. Can it be successfully maintained that plaintiff in error, in order to maintain its rights under the mortgages and actual possession, ought to remain at the store all night, guard and defend it with force and arms, instead of locks and keys? All other people maintain their possession and protect their rights of property, by the latter means, against all the

world, except trespassers and thieves. Why should not the plaintiff in error do likewise? *Cameron v. Morris*, 26 Kas. 612; *Tootle v. Coldwell*, 30 id. 125; *McVay v. English*, 30 id. 368; *Petring v. Chrustler*, 90 Mo. 649; *Dobyns v. Meyer*, 95 id. 132.

Plaintiff assigns as error that the judgment of the court below was contrary to the evidence and the law, and contends that, considering the evidence and testimony as shown by the record in the light of its competency, relevancy, and materiality, the judgment of the court below ought not only to be reversed, but judgment rendered in favor of the Standard Implement Company, sustaining its motion to discharge the property claimed by it from the levy under the order of attachment issued in this case.

A vigilant creditor is entitled to the advantages secured by his watchfulness and attention to his own interest. *Randall v. Shaw*, 28 Kas. 422.

It is clearly shown that, while the aggregate of the two mortgages was in excess of the amount of the indebtedness, it was only intended to secure the actual amount of indebtedness, and the fact that the aggregate amount of the consideration expressed in the mortgage is in excess of the *bona fide* indebtedness does not render the security void. *Bush v. Bush*, 33 Kas. 557; *Hughes v. Shull*, 33 id. 127; *Allen v. Fuget*, 42 id. 674.

The transfer of the $1,800 worth of Standand Implement Company's goods, to be credited as a payment on L. M. Spencer's indebtedness, was good under the evidence, though unaccompanied by possession. Gen. Stat. of 1889, ch. 43, § 3, and authorities cited. But the evidence shows conclusively, and is uncontradicted, that the Standard Implement Company, by its representative, J. N. Eastwood, took the actual possession of these goods. It was at a late hour in the night. He remained with them until after 3 o'clock in the morning, and went to the hotel and retired, being the sole possessor of a key to the building. The law does not require unreasonable things; and it was not necessary, under the circumstances,

to tear down L. M. Spencer's signs, and to post notices that the goods were in possession of Standard Implement Company; and the fact that the transaction was in the nighttime raises no presumption of fraud, and is not sufficient evidence from which fraud can be inferred. It simply shows vigilance, diligence and activity on the part of the Standard Implement Company.

There is no evidence in the record showing actual fraud upon the part of the Standard Implement Company; and we contend that the circumstances surrounding the transaction will not authorize an inference of fraud, because fraud can only be inferred to the extent that the fraud is worked. The law presumes against fraud and in favor of good faith. Broom, Leg. Max. 947, and authorities cited. See, also, *Wilson v. Berg*, 88 Pa. St. 167; *Kay v. Noll*, 20 Neb. 386.

The evidence offered, and admitted by the court, on behalf of the Parlin & Orendorff Company, defendant in error, as to the conduct and declarations of L. M. Spencer, both before and after making the mortgages adduced in evidence, delivering possession, etc., to plaintiff in error, not had with or in the presence of plaintiff in error or its agents, was and is incompetent in this case, for the following reasons: (1) Said Spencer was no party to this proceeding; (2) the evidence wholly fails to show that plaintiff in error was, in any sense, or to any extent, in any manner whatever, directly or indirectly, connected therewith, or even had any knowledge thereof, until disclosed at the trial; (3) granting the whole thereof to be true, with every possible implication against said Spencer, that his purpose, conduct, etc., were fraudulent, both in law and in fact, still the plaintiff in error could not be affected thereby without more; (4) there is nothing in the evidence connecting plaintiff in error therewith; (5) granting everything alleged against said Spencer to be true, that plaintiff in error had knowledge thereof as and when the same is alleged to have transpired, yet, (6) it is undisputed, indeed, conceded all through the record, that plaintiff in error was a real, *bona fide* creditor for more than $4,300; (7) both plaintiff and defend-

ant in error were seeking separately to secure their respective debts from a failing, insolvent debtor; (8) the debtor had the right to prefer either creditor, even with the fraudulent intent to hinder and delay the other; (9) either such creditor had the absolute right to accept and enjoy such fraudulent preference with all the fruits thereof, provided, (10) it did not participate therein. In support of these propositions, see *Kuykendall v. McDonald*, 15 Mo. 416; *Casson v. Murray*, 15 id. 378; *Potter v. McDowell*, 31 id. 74; *The State v. Benoist*, 37 id. 500; *Shelly v. Booth*, 73 id. 74; *Albert v. Besel*, 88 id. 150–152; *Foster v. Mullanphy*, 92 id. 79; *Sexton v. Anderson*, 95 id. 373; *Cuendet v. Lahmer*, 16 Kas. 527; *Avery v. Eastes*, 18 id. 505; *Campbell v. Warner*, 22 id. 604; *Arn v. Hoerseman*, 26 id. 413; *Bishop v. Jones*, 28 id. 680; *Tootle v. Coldwell*, 30 id. 125; *Farlin v. Sook*, 30 id. 401.

*E. Sample*, and *Chester I. Long*, for defendant in error.

The burden of proof was upon the Standard Implement Company, which filed the motion to discharge certain property from the levy of the attachment, and claimed the stock under a chattel mortgage. *Swiggett v. Dodson*, 38 Kas. 709; *McCarthy v. Grace*, 23 Minn. 182.

Defendant in error submits that the following propositions are clearly established by the evidence:

1. That at 4:30 o'clock A. M., April 15, 1889, when the order of attachment was levied on the stock of goods of L. M. Spencer, neither of the chattel mortgages from L. M. Spencer to the Standard Implement Company had been recorded, the chattel mortgage for $3,000 being filed for record in the office of the register of deeds of Barber county, Kas., at 7 o'clock A. M., April 15, 1889, and the chattel mortgage for $4,300 being filed for record at 7 o'clock A. M., April 16, 1889.

2. At 4:30 o'clock A. M., April 15, 1889, when the order of attachment was levied on the stock of goods of L. M. Spencer, the Standard Implement Company was not in the actual possession of said stock of goods.

3. That the Standard Implement Company, when it took the mortgages from L. M. Spencer, knew that he was trying to hinder, delay and defraud his creditors, and said company assisted him in carrying out his designs.

There is no controversy as to the first of the above propositions between the parties to this action, the Standard Implement Company claiming a prior lien on the stock of goods from the fact that it was in the actual possession of the stock at the time the order of attachment was levied. It is therefore necessary to refer to the evidence in the record in proof of the second proposition. Certainly plaintiff in error will not insist that the delivery of the chattel mortgage to J. P. Hall, the register of deeds, on Sunday afternoon, April 14, 1889, complies with the statute requiring that the chattel mortgage shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated. The mortgage was not deposited in the office of the register of deeds until 7 o'clock A. M., April 15, 1889, as the register testifies in his evidence, and that is the hour at which the mortgage is marked filed. If the order of attachment was levied prior to that hour, the chattel mortgage is void as against the attaching creditor, unless the mortgagee had actual possession. *Ramsey v. Glenn,* 33 Kas. 271; *Jewell v. Simpson,* 38 id. 362.

The mortgagee cannot claim that the statute has been complied with simply by delivery of the mortgage to the register of deeds on Sunday afternoon, when he is not in his office, and when he did not file it in his office until next morning at 7 o'clock. "Possession must be taken in fact; it cannot be taken by words and inspection." Jones, Ch. Mort., § 186. See, also, Jones, Ch. Mort., §§ 187, 189; *McCarthy v. Grace,* 23 Minn. 182; *Swiggett v. Dodson,* 38 Kas. 702.

Where it is impossible to make a manual delivery of the property on account of its being bulky or cumbersome, it is necessary that some act be done that will indicate to third persons a change of ownership. *Wilson v. Hill,* 30 Pac. Rep.

1076. See, also, *Goard v. Gunn,* 29 Pac. Rep. 918, and cases cited; *Cook v. Rochford,* 12 id. 568; *Steele v. Benham,* 84 N. Y. 634; *Bullis v. Montgomery,* 50 id. 352; *Brunswick v. McClay,* 7 Neb. 137; *Menzies v. Dodd,* 19 Wis. 364; *Grant v. Lewis,* 14 id. 528; *Stevens v. Gifford,* 20 Atl. Rep. 542; *Moss v. Sanger,* 12 S. W. Rep. 616; *Wetzler v. Kelly,* 3 S. Rep. 747; *Seavey v. Walker,* 9 N. E. Rep. 347.

The opinion of the court was delivered by

HORTON, C. J.: It is contended that the trial court erred in ruling that the burden of proof was upon the Standard Implement Company, upon the hearing of its motion to discharge the property from the levy of attachment. It was not claimed that the attachment should have been discharged because the affidavit was untrue, or that the proceedings were irregular. The Standard Implement Company claimed part of the property attached as the absolute owner thereof, and also claimed the balance of the property under two chattel mortgages. Upon such a motion, the burden rested with the Standard Implement Company, the claimant of the property, and it was properly required by the court to first produce its evidence. After the the parties had had a trial, with their consent, before the court and a jury, and a verdict had been rendered in favor of the Parlin & Orendorff Company, the Standard Implement Company requested the court to pass upon the motion, independent of the verdict. This was done by the court. The motion to discharge the property was overruled. Therefore, as the case is now presented, we need not examine the questions raised concerning the instructions given to the jury.

1. Attachment— intervener— burden of proof.

The principal question is, whether the Standard Implement Company was in actual possession of the agricultural implements, buggies, wagons, etc., in controversy at the time the order of attachment was levied. It appears from the evidence that, prior to April 13, 1889, L. M. Spencer was carrying on business at Kiowa, Barber county. He was then

indebted to the Parlin & Orendorff Company for agricultural implements, machinery, merchandise, etc., over $3,000, and to the Standard Implement Company for other agricultural implements, machinery, etc., $4,352.37.  On the 12th of April, 1889, L. M. Spencer executed to A. N. Spencer, his brother, a chattel mortgage for $2,000 upon his stock of goods, but dated the mortgage back to April 10, 1889.  It seems to be conceded that the chattel mortgage of $2,000 to A. N. Spencer was without consideration, and given to defraud, delay and hinder the creditors of L. M. Spencer.  On the 13th of April, 1889, L. M. Spencer executed a mortgage of $3,000 upon his stock of goods to the Standard Implement Company, but dated it April 12, and then sent the same from Kiowa by mail to J. P. Hall, the register of deeds of Barber county, at Medicine Lodge, requesting him to "keep inclosed in your possession."  There were no instructions to file or record the same.  Hall received this chattel mortgage on the 13th of April, 1889, and on Sunday, the 14th of April, 1889, J. N. Eastwood, the agent of the Standard Implement Company, called on him and received the mortgage executed by Spencer.  He then redelivered it to Hall, as register of deeds, and requested him to file it in his office, and paid him his fees for such service.  On the following morning at 7 o'clock, Monday, April 15, Hall filed the mortgage in his office; but before that time, and about 4:30 o'clock A. M. of April 15, the order of attachment of the Parlin & Orendorff Company was levied at Kiowa upon the stock of L. M. Spencer.  On April 15, 1889, L. M. Spencer executed another chattel mortgage to the Standard Implement Company for $4,300, but this was not filed for record until the 16th of April, 1889, at 7 o'clock A. M., long after the levy of the attachment.  It is said the second mortgage was given because the first mortgage did not cover the full indebtedness of Spencer to the Standard Implement Company.  If the chattel mortgage of $3,000, of April 12, 1889, was not deposited for record prior to the levy of the attachment on the morning of April 15, and if,

at the time of such levy, the Standard Imple-
ment Company was not in actual possession of
the stock of goods levied upon, the chattel mort-
gage was absolutely void as against the Parlin & Orendorff
Company, attaching creditors. (Gen. Stat. of 1889, ¶ 3903;
*Ramsey v. Glenn,* 33 Kas. 271; *Jewell v. Simpson,* 38 id. 362.)

*3. Chattel mortgage, when void.*

It is urged that the mortgage of $3,000 was accepted in
good faith, and that as Hall, the register of deeds, was re-
quested by Eastwood, the agent of the Standard Implement
Company, on Sunday, April 14, 1889, to file the same, the
filing thereof must date from that time, and therefore that
the chattel mortgage was deposited in the office of the reg-
ister of deeds prior to the levy on the morning of April
15. The delivery by Eastwood to Hall of the chattel mort-
gage of $3,000, on Sunday, April 14, cannot be considered
as a "deposit in the office of the register of deeds" on that
day. The public offices of a county are not open on Sun-
day, nor are they required to be open for business of any
kind on that day. (Gen. Stat. of 1889, ¶ 1877; Crimes Act,
§ 255; *Morris v. Shew,* 29 Kas. 661; *City of Parsons v. Lind-
say,* 41 id. 336.) It is not claimed that the register was in
his office on April 14, or that the chattel mortgage was left
at his office, and no creditor or subsequent purchaser was
bound to take notice of such mortgage until taken
to the office, or filed by the register of deeds in his
office, at 7 o'clock on the morning of April 15.
This was after the levy of the attachment. If the
chattel mortgage had been deposited during the usual business
hours of any week day by Eastwood with the register of deeds,
in his office, and the register had failed or neglected to file it
until the next morning, or some subsequent day, the rights
of the mortgagee would not be affected or prejudiced thereby,
in a contest with another creditor. But, as stated, the chattel
mortgage was not deposited for filing until the morning of
April 15. Before that time, Hall was acting merely as the
agent of the Standard Implement Company.

*2. Chattel mortgage, when deemed filed— rights of creditors.*

The testimony as to the party or parties in the actual possession of the stock of goods of L. M. Spencer at the time of the levy is greatly conflicting.  There was testimony introduced tending to show that A. N. Spencer, on the 13th of April, 1889, under his fraudulent mortgage, took actual possession of the store building and adjoining premises, with all the goods, wares and merchandise in dispute; that he continued in the possession of the building and the premises, and the goods and merchandise, until the levy.  The affidavit of Mary J. Spencer, offered by the Standard Implement Company, stated among other things that just before the levy "George W. Stevens, the sheriff, came to the residence of L. M. Spencer and said he wanted a key to the store building of Spencer; whereupon A. N. Spencer, the brother of L. M. Spencer, said, in reply, 'that he had the key to the store and was in possession of the stock of goods of L. M. Spencer, under and by virtue of a chattel mortgage executed by L. M. Spencer to him, and that he would be up to the store within half an hour.'"  There was testimony introduced to show that, on the 13th and 14th of April, L. M. Spencer was carrying on the business in the store as usual, and than A. N. Spencer was not in charge.  There was also testimony introduced tending to show that A. N. Spencer and the Standard Implement Company had joint possession of the stock at the time of the levy; and there was further testimony introduced tending to show that, between 2 and 3 A. M., of April 15, Eastwood, the agent of the Standard Implement Company, went into the store building of L. M. Spencer, accepted possession of the goods from A. N. Spencer, subject to his possession, and left the store before 3 o'clock, locking the door and putting the key of one of the doors of the building in his pocket; that he then went to his hotel and retired.  George W. Stevens, the sheriff, testified:

"Ques.  Now, referring to that order [attachment], about what time was it that you went to Kiowa that night?  Ans. Well, it was in the morning of the 15th I think; I know it was before daylight; I can't tell the exact hour, but I think

between three and four o'clock; I would not be certain about that, but before daylight.

"Q. Did you go to L. M. Spencer's residence that night? A. Yes, sir.

"Q. What did you do there? A. Why, I told him what I had come for; that I had come with an attachment to take possession of his stock of goods there.

"Q. Where were you when you made that statement? A. I was in his house.

"Q. Who was present? A. His brother and his wife were there.

"Q. What did L. M. Spencer say to that? A. Well, I can't say exactly what he did say; he pretended to be very sick, and didn't want to talk about it, and didn't talk about it; I said 'pretended,' I guess he was sick.

"Q. You demanded the key? A. Yes, I asked him for the key; his brother [A. N. Spencer] was there; his brother done more talking than he did; he said he held the goods under a chattel mortgage — held the stock.

"Q. Claimed to be in possession of it? A. Yes, sir.

"Q. Did he say anything about anybody else being in possession with him of the stock? A. No, I think not; don't think he did.

"Q. You demanded the key of L. M. Spencer? A. Yes, sir.

"Q. What did he say? A. Said he didn't have it, and his brother said he would bring it to me, up to the store building, in 15 minutes.

"Q. Where did you go from there? A. To the store building.

"Q. You waited 10 or 15 minutes? A. Yes; longer than that, I think.

"Q. Did A. N. Spencer come? A. No; never came.

"Q. What did you do then? A. I went into the building; I put my notices in there that I had attached the property.

"Q. Now, at the time you took possession of that stock under this order of attachment, was there anyone else there except Mr. Hopkins, Mr. Mercer, and yourself? A. No, sir; no one there except the parties that went with me.

"Q. Was there any notices or signs tending to show that the stock had been taken possession of by some one else? A. Not to my knowledge; I saw nothing, sir.

"What did you do after taking possession of the stock? A. I went from there to the hotel, but left the building in charge of Mr. Hopkins; he agreed to take charge of it until I came back in the morning.

"Q. What time did you go back in the morning? A. Seven o'clock, perhaps; as soon as I got breakfast, I went back to the store building.

"Q. Who was there at that time? A. Mr. Hopkins was there; I do n't remember whether Mercer was there when I got there; if not, he was there soon after.

"Q. Did anyone else come there? A. I think several others came there during the morning; do n't remember all who were there."

On account of the conflicting evidence concerning the actual possession of the stock of goods and merchandise at the time of the levy, we cannot, as against the general finding of the trial judge, reverse the judgment. There was sufficient evidence introduced to show the Standard Implement Company did not have the actual possession at the levy. The burden of proving such possession was upon that company, the claimant of the property. (*Swiggett v. Dodson*, 38 Kas. 702; *McCarthy v. Grace*, 23 Minn. 182; *Wilson v. Hill*, 30 Pac. Rep. 1076.) The evidence being conflicting, we cannot interfere.

4. Evidence sustains finding.

We will not construe the contracts of sale between the Standard Implement Company and L. M. Spencer, because it is admitted "that the title clause in the contracts only operated as a lien upon the goods." We do not decide that this is a proper interpretation of such contracts. The act of the legislature of May 25, 1889, requiring written contracts of conditional sales to be recorded, did not affect the rights of the parties as the same accrued prior to the law going into force. (Laws 1889, ch. 255.)

The order and judgment of the trial court will be affirmed.

All the Justices concurring.