THE SMITH-FRAZER BOOT AND SHOE CO. v. W. A. WARE,
*as Sheriff of Osborne County.*

1. TROVER AND CONVERSION — *Chattel Mortgage — Recovery — Evidence.* In an action against a sheriff by a chattel mortgagee, the lien of whose mortgage is subordinate to a first mortgage and the levy of three several orders of attachment, to recover the amount of his mortgage because of the conversion of the property, it is necessary that a wrongful taking, or a taking made wrongful by subsequent conduct, or a conversion, be established by the evidence.

2. LIENS —*Priority.* Three several orders of attachment levied on a stock of merchandise on the 30th day of October create a lien prior to and superior to that of a chattel mortgage filed in the office of the register of deeds on the 1st day of November of the same year.

3. SHERIFF — *Conversion—Responsibility.* A sheriff being in the actual possession of a stock of goods by virtue of a levy made in pursuance to three several writs of attachment in his hands, is not responsible to a subsequent chattel mortgagee for conversion, when a receiver duly appointed by the court from which the orders of attachment issued takes exclusive control and possession of the same, and sells and receives the proceeds.

*Error from Osborne District Court.*

THE case is fully stated in the opinion.

*James & Johnson,* and *Walrond, Mitchell & Heren,* for plaintiff in error.

*Robinson & Lawrence,* for defendant in error.

Opinion by SIMPSON, C.: This is an action commenced in the Osborne district court by the plaintiff in error against W. A. Ware, who was sheriff, to recover damages for the wrongful taking possession of and the conversion of certain property. At the October term, 1888, there was a trial by the court, and special findings were made that substantially embody all the material facts. The findings of fact and conclusions of law are as follows:

### "FINDINGS OF FACT.

"On the day prior to the 30th day of October, 1886, one H. H. Withers was the owner and in the possession of a certain stock of goods and general merchandise in the town of Portis, Osborne county, Kansas, and had been doing a general retail business in the building in which the goods and merchandise were situated at the time. Said Withers was indebted to plaintiff in this case, and a large number of other creditors, and shortly before the 30th day of October, 1886, he executed and delivered to the Wm. B. Grimes Dry Goods Company a chattel mortgage for $1,249.17 on said stock of goods, and said chattel mortgage was filed for record, in the office of the register of deeds of Osborne county, Kansas, on the 28th day of October of said year, and on the 30th day of October said Withers executed and delivered to plaintiff in this action a chattel mortgage for $686.30, which is set up and made a part of the petition in this action, on the same stock of goods and merchandise, and said chattel mortgage was filed for record in the office of the register of deeds of Osborne county, Kansas, at 3:30 o'clock P. M. of the 1st day of November, 1886. The chattel mortgage from Withers to plaintiff was made, executed and delivered about 11 o'clock A. M., at Atchison, Kas., October 30, 1886. On the said 30th day, and about 5 o'clock in the evening of the said day, the defendant, sheriff of Osborne county, Kansas, levied three writs of attachment upon said stock of goods and merchandise. The aggregate amount of the said three writs was something over $750; and the order directed the sheriff also to levy upon sufficient amount to cover costs in the probable sum of $50. The sheriff levied each of three writs of attachment upon the entire stock of goods, and invoiced the same, and the invoice value was about $4,600. Thereafter, and at divers times between and including the 3d day of November, 1886, and the

8th, the sheriff levied these other writs of attachment on said stock of goods and merchandise for other creditors of Withers, subject to the levy of the first writ. The aggregate amount of the last six subsequent writs was about $1,389.53, and the probable costs in each case. Some time after the levy of all of said writs the creditors under the three first orders of attachment, and the Wm. B. Grimes Dry Goods Company, by agreement, placed one Buchanan in possession of the stock of goods, not by order of court, but as a sort of an agreed receiver, with the understanding that he should sell the goods at retail, to the best advantage possible, and pay the proceeds into court, to abide the order of the court; and under the arrangement said Buchanan sold about $700 worth of goods, but never paid anything into court. Said Buchanan was an employé of said Wm. B. Grimes Dry Goods Company. Afterward, and on the 15th day of January, 1887, the judge of this court, at chambers, appointed J. W. Marshall receiver, to take possession of said stock of goods, to sell the same, and to pay the proceeds into court. Said receiver took possession and made an invoice of the stock, which then invoiced $4,022.50, when by leave of the court the Wm. B. Grimes Dry Goods Company commenced an action in replevin in this court against said receiver to recover possession of said goods by virtue of their chattel mortgage, and on the hearing of said case the mortgage of said Wm. B. Grimes Dry Goods Company was adjudged valid, and the court found the right of possession in favor of plaintiff in that action, and that the value of its interest therein was $1,365.25. Under the writ of replevin in said action of Wm. B. Grimes Dry Goods Company against the receiver, the possession of the goods and merchandise was by the sheriff delivered to the plaintiff therein, and after the judgment in the case the plaintiff proceeded in that action to sell, and sold until he acknowledged the satisfaction of his mortgage claim, and tendered the remainder of the stock back to the receiver, Marshall, and the receiver accepted of the goods and proceeded to invoice the same, which then invoiced $2,559.25, and sold the same for $1,605, and making his report of the same to the court, which was approved and his bill of expense for $67.75 and $125 for his services was allowed, and the balance being paid into court, $1,412.25. On the order of the court, said amount was paid as follows: First, all the costs in the attachment, which aggregated $117.75, $54.95 of which was in the three attach-

ment cases first levied, and $62.80 the amount of costs in the six subsequent attachment cases; second, to the payment of the judgment rendered in the first three attachment cases; third, to the payment in full of the fourth attachment case, which left the remainder $500, which was applied on the attachment cases. That is to say, there was $718.80 paid out on the order of the court on the attachment suits, besides paying the judgment and costs in full in the first three attachment cases.

"At the time the attachments were levied, on the 30th of October, 1886, the sheriff found in possession of the store and stock of merchandise a man by the name of Knoff, who had possession of the key to the store, Withers being then in Atchison; Knoff had been in and about the store for some days prior to the execution of the mortgage from Withers to the W. B. Grimes Dry Goods Company, and shortly before Withers' departure to Atchison, Withers had employed Knoff to take charge of the store, telling him that he should hold it as the agent of the W. B. Grimes Dry Goods Company, but no agent or person representing the W. B. Grimes Dry Goods Company, unless it be Withers, ever authorized or employed Knoff to hold possession of the store. Two other clerks in the store at the time were clerks who had been regularly and previously employed for some months by Withers. Knoff was employed to take charge of the store only during the temporary absence of Withers, and on Withers' return he paid over to Withers the proceeds of the sales made in the store during his absence. On the 30th day of October, 1886, there was no apparent change in the manner of conducting the business, or the persons in charge, different from what there had been while Withers was conducting the business, except that Knoff had not previously had the keys, but on this day he had not or did not make known the fact, until he was interrogated in reference to it, and, when asked who was the clerk in charge of the business, referred the deputy sheriff to another clerk in the store, who had been there some months under the employment of Withers. There were two keys to the store; the evidence shows that Knoff had one key; whether he had both keys, or where the other key was, the evidence does not disclose. In the mortgage dated October 28, 1886, from Withers to W. B. Grimes Dry Goods Company, the provision in reference to possession is as follows: 'And until default be made as aforesaid, or until such time as the party of the second part shall deem him-

self insecure, as aforesaid; the said party of the first part to continue in peaceful possession of all of said goods and chattels, as above specified.'

"Prior to that there was this reference to the possession in said mortgage:

"'It is expressly understood and agreed by and between the parties hereto, that H. H. Withers shall have possession of said property only as the agent of the said W. B. Grimes Dry Goods Company, and that he sell said goods for cash only, in the usual course of business, keeping a true account of all the sales and expenses, and shall apply the proceeds of said sales to the payment of the debt hereby secured, and shall at all times, when demanded by the second party, make full and true account of all sales and receipts arising therefrom.'

"And the mortgage from Withers to the Smith-Frazer Boot and Shoe Company, plaintiffs, dated October 30, 1886, has the following provision in reference to the possession of the goods thereunder:

"'It is expressly understood and agreed by and between the parties hereto, that H. H. Withers shall have possession of said property only as the agent of the said Smith-Frazer Boot and Shoe Company, and that he shall sell said merchandise for cash only, in the regular course of business, keeping a true account of all sales and expenses, and shall apply the proceeds to the payment of the debt hereby secured. He shall at all times, when demanded by the second party, make full and true account of all the sales and receipts arising therefrom.'

"And further on there is the following provision:

"'The said possession of the said property heretofore mentioned to be held subject to the possession of the William B. Grimes Dry Goods Company, under the chattel mortgage executed to it October 28, 1886, to which mortgage this is made subject.'

"And further on there is the following provision:

"'And until default be made as aforesaid, or until such time as the party of the second part shall deem himself insecure as aforesaid, said party of the first part to continue in the peaceful possession of all of said goods and chattels as above specified, all of which in consideration hereof he engages shall be kept in as good condition as the same now are.'

"On the 30th day of October, 1886, when the sheriff levied the three orders of attachment, he had no notice or knowledge whatever of the existence of the mortgage from Withers to the Smith-Frazer Boot and Shoe Company, executed on the forenoon of that day at Atchison. After the sheriff delivered the stock of goods and merchandise in question to Marshall, as receiver, under the order of the court, he never thereafter had any possession whatever of said goods, except that he took the same on the order of replevin in the suit of William B. Grimes Dry Goods Company against the receiver, and turned them over to the W. B. Grimes Dry Goods Company, and

never at any time sold or received any of the proceeds of said goods or any portion thereof in any way whatever. After the mortgage from Withers to plaintiff was executed, in Atchison, on the 30th day of October, 1886, the same was delivered to the mortgagor, Withers, to be filed for record. The ensuing day was Sunday, October 31st. The distance from Atchison to *Portis*, where Withers lived and did business, is 218 miles. Withers arrived by train from Atchison on Sunday evening at Portis, and on the following day drove to Osborne, the county-seat of Osborne county, which is a distance of $8\frac{1}{2}$ miles, and filed the mortgage ·for record at 3:30 in the afternoon; said Withers returned from Atchison to Portis on the first train he could obtain after the execution of the mortgage. Said Withers consented to Buchanan acting as receiver in the selling of the goods, before the appointment of Mr. Marshall as receiver by the court; and after the commencement of the replevin action by the W. B. Grimes Dry Goods Company against the receiver, the sheriff turned over the possession of the goods to Buchanan as agent of the W. B. Grimes Dry Goods Company, and Buchanan was the agent who redelivered the same to the receiver after the sale of sufficient goods to pay the claim of the W. B. Grimes Dry Goods Company. The plaintiff's claim has not been paid, or any part thereof. At the time said Withers gave the mortgage in question to plaintiff, and on the 30th day of October, 1886, the plaintiff agreed to accept said mortgage, with the express understanding, at its request, that the agent of the W. B. Grimes Dry Goods Company had possession of the stock of goods and merchandise in question, and that he would hold the same as the agent of plaintiff and said W. B. Grimes Dry Goods Company. The amount of the plaintiff's claim on the 3d day of October, 1887, was $686.30. During the time Buchanan, agent for W. B. Grimes Dry Goods Company, was selling the goods to satisfy the mortgage of W. B. Grimes Dry Goods Company, said Withers was present as clerk and assisted in making sales. The plaintiff made demand on the sheriff for sufficient of the proceeds of the sale to pay his claim a short time prior to the bringing of this suit. Demand was refused."

### "CONCLUSIONS OF LAW.

"It seems at least a matter of question whether or not there is any complaint in the plaintiff's pleadings in this case against the defendant for any trespass committed in the levying of the

six writs of attachment on the stock of goods in question, between the 3d and 8th day of November, 1886. If there is any issue under the pleadings of a trespass in the levying of said writs, it is constructive, under the legal claim that, if any wrongful act is shown to have been committed by the defendant with reference to the goods at any time subsequent to the first levies, that it should relate back to the original levy. Under the findings of fact, I find that the levy of the first three orders of attachment by the defendant upon the stock of goods in question, on the 30th day of October, 1886, was rightful as against plaintiff's claim under its mortgage.

"I find also, as a conclusion from the facts previously found by the court, that under the terms of the mortgage which the plaintiff took from H. H. Withers upon the stock of goods in question, the agent of the W. B. Grimes Dry Goods Company, which had a prior mortgage to the plaintiff upon the stock of goods in question, should be held to be also the agent of the plaintiff in all matters pertaining to the possession, sale and control of said stock of goods and merchandise.

"I find also, as conclusions from said findings, that the agent of the W. B. Grimes Dry Goods Company, one Buchanan, with the assistance of H. H. Withers, who was by the terms of the plaintiff's mortgage made plaintiff's agent in the matter of the possession and sale of said stock of goods, sold $700 worth of said goods before said W. B. Grimes Dry Goods Company replevied said goods from the receiver appointed by the court to sell the same, and that said amount was not accounted for, nor taken into consideration in the replevin action in determining the value of the plaintiff's interest in that case in said stock of goods under said mortgage. W. B. Grimes Dry Goods Company, by its agent, said Buchanan, and Withers, afterward sold or disposed of nearly $1,500 of said stock of goods to satisfy the mortgage of the said W. B. Grimes Dry Goods Company. The court has found that the plaintiff's claim under its mortgage has not, in fact, been paid; but it seems probable, as a conclusion from such findings, that there is or was sufficient funds in the hands of the joint agent or agents of the said Wm. B. Grimes Dry Goods Company and the plaintiff to discharge both the plaintiff's and the claim of Wm. B. Grimes Dry Goods Company.

"The court finds as a proposition of law that when the Wm. B. Grimes Dry Goods Company, in the action of replevin for that purpose, recovered the possession of the stock

of goods in question from Mr. Marshall, the receiver appointed by the court, and the goods were turned over to the Wm. B. Grimes Dry Goods Company, in accordance with the judgment, that the lien of the attachments previously levied thereon by the sheriff, upon such delivery ceased to exist, and that thereafter the agent of the said Wm. B. Grimes Dry Goods Company, said Buchanan, and from the circumstances of the case probably, with the knowledge and consent of Withers, voluntarily turned said goods over to the receiver, Marshall, without any action whatever upon the part of the defendant, or any participation in the said act. If there is any issue in this case charging the defendant with trespass in levying the six subsequent attachments, on and after November 3, 1886, I find as a proposition of law that the sheriff should have levied such attachments subject to the mortgage of the plaintiff; but if the levy of such attachments without being levied subject to the claim and mortgage of the plaintiff was wrongful, I think no damage has been shown to the plaintiff by reason thereof, in this case, and that under the evidence its damage should only be considered as nominal at most. I find in favor of the defendant in this case, and against the plaintiff for costs.

"I think that the plaintiff is estopped, by the action of its agent in turning the goods over to the receiver, from claiming any damage in this case against the defendant. I think that the plaintiff, by its agent, was apprised at every step of the proceeding of the conversion of the goods into money and the manner in which the proceeds were being applied, and that it has been guilty of *laches*, standing by and seeing the goods it had the right to appropriated to the payment of other claims, without making any effort to assert its own claim upon the same, and that it should not be allowed to recover from the officer who levied the attachments, under all the circumstances of the case."

The boot and shoe company brings the case here for review, having saved all exceptions, and assigns many errors.

I. The first contention that demands consideration is respecting the issues made by the pleadings. The plaintiff in error in its petition charges that on the 30th day of October, 1886, the defendant wrongfully and unlawfully took possession of, and without the right, and against the consent of the plaintiff in error, entirely deprived them of the title to and

use of the property, and converted the same to his own use. The defendant below and defendant in error pleaded in justification under three several writs of attachment issued out of the district court of Osborne county, and delivered to him as sheriff of said county, and that he executed the same on said day without notice or knowledge of the chattel mortgage of the plaintiff in error; that afterward a receiver was appointed by said court, and he was ordered to and did turn over to the receiver the stock of merchandise levied upon by said orders of attachment. The plaintiff in error in its reply alleges that the Grimes Dry Goods Company recovered possession of the goods by an action of replevin against the receiver, but alleges that a portion of said goods, amounting to $700 in value, had been wrongfully disposed of under and by virtue of the pretended writs of attachment set up in the defendant's answer before the action of replevin was commenced by the dry goods company. And it is further alleged in the reply "that this plaintiff has been wholly and wrongfully deprived of said goods and their ownership therein by reason of the wrongful and unlawful seizure and conversion of the said goods by the said defendant, under the pretended attachments as set up in his answer; that the said attachments and the writs were not valid." In this condition of the pleadings, the issue was narrowed to the trespass, if any, committed by the defendant under the three writs of attachment issued and levied on the 30th day of October, because this is not only the natural construction of the pleadings, but after judgment they must be construed so as to sustain the judgment. Before judgment, if they were attacked, that construction would be adopted that told most strongly against the pleader; so under the operation of any of these rules the result would be the same. The inquiry is then restricted to any conversion by reason of the three orders of attachment issued on October 30th.

II. The next contention of the plaintiff in error is that it was in possession of the stock of goods, subject to the rights and possession of the dry goods company. This contention is principally based upon a construction of ¶ 3903 of the act

relating to the mortgage of personal property. This section provides "that the mortgage shall be void unless forthwith filed," etc. The plaintiff in error claims that when its chattel mortgage was executed in Atchison, on Saturday, October 30th, and filed for record on the 1st day of November, at 3:30 o'clock P. M., the intervening day being Sunday, and Atchison being 218 miles away, it was forthwith filed, and, when filed, all of its provisions took effect when executed, on the 30th day of October, so as to have precedence of the attachment levies made intermediate its execution and filing for record. We do not think this is the proper construction to be given that section. It is not the one generally acted upon by the bar, or contemplated, if not expressly decided by this court. Our view is, that the mortgage only became operative, as notice to other creditors, after it had been filed in the office of the register of deeds. It would involve innocent parties in interminable difficulties to hold that, although a chattel mortgage had been filed in the office of the register of deeds days or weeks after its execution, yet it was notice from the date of its execution. We must hold, therefore, that whatever rights the plaintiff in error derived from its chattel mortgage, other parties who had no knowledge of its execution were only bound by the notice imparted by its filing in the office of the register of deeds. Therefore, at the time of the levy of the three orders of attachment, on the 30th day of October, complained of in the reply of the plaintiff in error to the answer of Ware, the plaintiff in error had no rights in or to these goods by virtue of the chattel mortgage executed by Withers that Ware or the attaching creditors had notice of. The levies were good as against the plaintiff in error, whether good against the dry goods company or not. The plaintiff in error, at the time of these attachment levies, was not in possession of the goods attached, had no legal right to their possession at that time as against the attaching creditors, and consequently this defendant in error, as sheriff, and as the officer who made the seizure and levy by virtue of the orders of attachment, could not and did not commit an act of trespass against the plaintiff in error.

The fact that the dry goods company successfully prosecuted an action of replevin for the possession of these goods does not help this plaintiff in error. The dry goods company was entitled to the possession of the goods because it had the first mortgage on them; and because, at the time the three attachments were levied, it was in the actual possession, or, the conditions of the mortgage being broken, it was entitled to the possession. It could succeed in such an action for either of these reasons, but the possession of the dry goods company was not the possession of the plaintiff in error, because its succession to the possession of the goods was defeated by its failure to file its mortgage in the office of the register of deeds until after the levy of the attachments.

III. The plaintiff in error, in its reply to the answer of the defendant below, alleges that a portion of the said goods embraced in its chattel mortgage, amounting to the sum of $700, had been wrongfully disposed of under and by virtue of the pretended writ of attachment set up in the defendant's answer, by the defendant herein, before said action of the said Wm. B. Grimes Dry Goods Company was brought to recover said goods, or the value of its special ownership therein. The facts are, as found by the court, that some time after the levy of all of the orders of attachment the creditors under the three first orders of attachment and the Wm. B. Grimes Dry Goods Company and Withers, the debtor, by agreement placed one Buchanan in possession of the stock of goods as an agreed receiver, with the understanding that he should sell the goods at retail, to the best advantage possible, and pay the proceeds into court; and under the arrangement said Buchanan sold about $700 worth of goods, but never paid anything into court; that said Buchanan was an employé of the Wm. B. Grimes Dry Goods Company. The plaintiff in error claims that this was a conversion by the sheriff. We think the attaching creditors and the first mortgagee had the legal right to stipulate as to the possession of the goods, and that from the moment the defendant in error yielded possession in pursuance of such agreement he was no longer either per-

sonally or officially liable for the same; certainly not to any of the parties to the agreement; and certainly under these circumstances not to the plaintiff in error, who was not in court, or was making no claim for them or any part of them, or who was not asserting any rights in the controversy; and especially is this true when the owner of the goods in equity, Withers, was a party to this agreement; but even if the sheriff had been disposed to have refused to deliver the goods to the agent of the attaching creditors and the dry goods company, such delivery could have been enforced by an order of the court, because the dry goods company was entitled, by the plain words of the statute, to the possession of the goods; and that right it subsequently enforced against a receiver appointed by the court. So, if the right of recovery by the plaintiff in error is based upon the default of the agent to pay into court the $700 worth of goods sold by him, it is not good against this defendant in error. The plaintiff in error has a plain remedy for the failure of the agent of the contracting parties to account for the proceeds of sale. As we understand the law, attaching creditors, or plaintiffs who resort to attachment proceedings and thereby secure first liens, have the absolute legal right to control such proceedings. They can release their levies entirely, or they can by agreement with each other and with the debtor take the property out of the hands of the sheriff, or the officers who made the levies, and commit it to the care and possession of some one else, and thereby absolve the sheriff from liability for the original levy or continued possession. It is true that by this agreement they may create a liability against themselves on behalf of some other creditor, but any other rule would make a sheriff liable for loss of the property after the possession was taken from him by parties in interest. All this, without reference to the finding of the court that the agent selected by the dry goods company and the attaching creditors was also the agent of the plaintiff in error. It may be well doubted under the facts in this record and the case of *Swiggett v. Dodson,* 38 Kas. 702, if the Wm. B. Grimes Dry Goods Company ever had the actual possession of the goods

of Withers, and if there was that continued change of posses-
sion required by the statute, as held in that case; and hence, if
the three attachment levies of October 30th had not intervened,
the same doubt would exist as to the possession of this plain-
tiff in error, subject to that of the dry goods company. The
finding of the court that Buchanan was the agent of the plain-
tiff in error is largely a deduction from the terms of the mort-
gage and the circumstances attending its execution, rather than
a conclusion of fact based upon express oral evidence; and yet
Blake, a witness for the plaintiff in error, and the attorney of
the dry goods company, swears that he was in possession of
the stock of goods at the time of the execution of the chattel
mortgage by Withers to the plaintiff in error. He fully un-
derstood that his possession was as agent for the dry goods
company and the boot and shoe company jointly, and that
point was fully agreed upon by both paries.

Frazer, the treasurer and credit man of the boot and shoe
company, states in his deposition that he agreed to accept the
mortgage on the condition that the dry goods company would
hold possession for both; so that there is some evidence to
support the finding of the court that Buchanan was the agent
of the plaintiff in error, as well as of the dry goods company
and of the first three attaching creditors; and, upon this the-
ory of the case, it would be gross injustice to say that the plain-
tiff in error can now hold Ware responsible for any shortage
occasioned by the act of Buchanan.

IV. The plaintiff in error in this case must recover, if at
all, under the allegations of its petition against the defendant
in error, for a wrongful taking, or a taking made wrongful
by subsequent conduct—a trespass rather than a trover—
because it is very clear from the record that, even if the agreed
receivership of Buchanan had no validity, the court appointed
Marshall receiver without objection by any of the interested
parties, and ordered the receiver to take possession of the goods,
and hence there has been no conversion by the sheriff. He
did not sell or otherwise dispose of them, but delivered the
possession of them to the receiver on an order of the court.

We have seen that the original seizure of the goods was not wrongful as against this plaintiff in error, because of the priority of lien of the attachment levies. If the plaintiff in error seeks to recover in trover, then it must show either absolute ownership, or a special interest in the property, coupled with actual possession, or the right to the immediate possession at the time of the tortious act. The plaintiff in error had a special interest in the property after its chattel mortgage was filed in the register's office, but did not have either actual possession, or the right of immediate possession, because both the dry goods company's mortgage and the three attachment levies of October 30th were prior levies, and there can be no successful contention but that the right to possession by the boot and shoe company was subordinate to the others.

V. Our conclusions are, that because the plaintiff in error fails to show a wrongful taking by Ware, as sheriff, in the first instance, and because it is shown that Ware, as sheriff, did not sell or dispose of the property, but that it was taken possession of by a receiver duly appointed by the court, the plaintiff in error has no right to recover in this action. The other assignments of error are not regarded as material, in this view.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.