No. 18,704.

C. T. ATKINSON, *Appellant,* v. EDGAR BUSH et al.,
*Appellees.*

### SYLLABUS BY THE COURT.

PLEDGE—*Personal Property—Must be Actual Delivery and Continued Possession.* To constitute a valid pledge of personal property as security for a debt it is essential that there be an actual delivery of the property by the pledgor to the pledgee, and the pledgee must thereafter hold possession of the pledge openly and adversely to the pledgor.

Appeal from Cowley district court; CARROLL L. SWARTZ, judge. Opinion filed March 7, 1914. Reversed.

*A. M. Jackson, A. L. Noble,* both of Winfield, and *C. T. Atkinson,* of Arkansas City, for the appellant.

*W. P. Hackney,* and *J. T. Lafferty,* both of Winfield, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action in replevin brought by appellant to recover from appellees four horses, two wagons and three sets of harness. The petition alleged that on June 25, 1911, appellant loaned one W. H. Chidester $727.50, and received as security for the payment thereof a promissory note for that sum and a chattel mortgage on the property replevined, and that both note and mortgage were signed by Chidester and wife; that the mortgage was duly filed for record on the following day; and that the note and mortgage were due and unpaid. The petition also contained the usual allegations of demand and refusal to deliver possession and wrongful detention of the property by appellee.

The answer alleged that on May 27, 1911, Chidester had borrowed of appellee Bush $800, and that appel-

lee Kirk had given his promissory note to Bush for the amount, and that Chidester delivered the property re-plevined to Kirk to secure the payment of the note; that Kirk had been in the open and notorious possession of the property from that time, and that $400 and interest remained unpaid on the note. Kirk also claimed a feed bill and lien for $100 on the horses, and that he had paid off a small note, which had been of record since October, 1910, on one of the wagons.

On the trial it appeared, without conflicting evidence, that demand had been made by appellant upon appellees for a return of the property, which demand had been refused. It also appeared that at the time of the loan of $800 by Bush to Chidester, Kirk and Chidester were engaged in building a macadam road near Arkansas City, and had been so engaged since March previous. They were working jointly under a contract with the board of county commissioners. Prior to the transaction of the loan from Bush to Chidester the property in question was owned by Chidester, and in the possession of Kirk at his barn; that at the time of the loan Chidester verbally agreed to deliver the property to Kirk to be kept until the loan was paid; that the property thereafter continued, as before, to be kept by Kirk at his barn, and was used in the road work by practically the same men and in the same manner until shortly before it was sent to Bush's place, in August, and the horses were put in pasture. This was about two months after the mortgage to appellant was executed and recorded.

The transaction of pledging the property as related by Bush, one of the appellees, was as follows:

"Q. You may state what took place there between you? A. Mr. Chidester wanted to borrow $800, and Mr. Kirk said he would go his security. I told Mr. Kirk that I did n't know anything about Mr. Chidester; that I was not acquainted with him. I asked him what property he had. He told me. And I told him—I told Ed that I would let him have the money if Mr. Chides-

ter would put the horses in his possession, and I says, 'You take the horses in your possession and hold them until this money is paid,' and Mr. Chidester agreed to do that, and Ed says, 'I have already got the horses in my possession, they are in my barn.'

"Q. Anything said about the wagon and harness? A. There wasn't anything said about the wagon and harness; the horses, that is all that was spoken about; he told me how many teams he had, it was either three or four teams. I went over to the bank and let Ed have the money."

By this it appears there was no attempt to pledge the wagons or harness, and that there was no change in the possession of the horses or delivery thereof at that time.

Mr. Kirk, the other appellee, also testified that at the time of the negotiation of the loan from Bush to Chidester the property in question was in his possession in his barn. He testified that by agreement the property was to be turned over to him as security, but there seems to be an entire lack of evidence that there was any actual change of possession.

Appellee Bush further testified:

"Q. You wasn't there when the property was taken by the sheriff at all? A. No, sir, I was here in Winfield; I was here in Winfield at the time they replevined it and got notice; I told the sheriff to go and get the stuff; that I had nothing to do with it."

As will be seen, there is practically no conflict in the evidence in this case. The appellant's recorded mortgage entitled him to the possession of the property unless there was a prior valid pledge thereof which entitled the appellees to priority.

A pledge of property is analogous to a chattel mortgage in that it constitutes a lien on the property pledged to secure the payment of the debt according to the contract. Not being in writing, however, the attempted pledge shown by the evidence in this case could not be filed for record to preserve its priority as

Atkinson v. Bush.

a chattel mortgage might have been.   We have no statute relating to pledges and the common law therefore applies thereto.   To constitute a valid pledge of personal property as security for a debt, it is essential that there be an actual delivery of the property by the pledgor to the pledgee, and the pledgee must thereafter hold possession of the pledge openly and adversely to the pledgor.    (*Raper v. Harrison,* 37 Kan. 243, 15 Pac. 219; 31 Cyc. 799.)

It is apparent from the evidence of the appellees that there was no actual change in the possession of the property from Chidester to either of the appellees at or after the time of the alleged pledge of the property in May, 1911.   It also appears that the mortgaged property was not openly held in the possession of either of the appellees at any time before the execution and recording of appellant's mortgage, but that both before and after the execution and recording of such mortgage, to all public appearances, the property was held by Chidester, and that it had been used by the same men and for the same purpose by whom and for which it had been used prior to the transaction of the alleged pledge.

To hold a secret pledge valid, without any actual change of possession of the property from the pledgor to the pledgee, would be to open wide a door to fraudulent transactions.   There must be an actual delivery to and open possession by the pledgee thereafter.

We think the appellees' own evidence failed to show any defense to the appellant's lawful claim to the possession of the property, but, on the other hand, it showed that the alleged pledge of the property to them or either of them was against public policy and invalid.

The judgment is reversed and the case is remanded with instructions to render judgment for appellant.