No. 19,850.

W. C. HALL, *Appellee*, V. THE KANSAS CITY TERRA COTTA COM-
PANY (THE SOUTHWEST NATIONAL BANK OF KANSAS CITY,
Mo., Interpleader, *Appellant*).

SYLLABUS BY THE COURT.

1. ASSIGNMENT—*Proceeds of Contract—Valid as Against Garnishment.*
Where a defendant corporation assigned to a bank the proceeds of a
contract due and to become due for furnishing materials and labor to
a building contractor, such assignment is valid as against a garnish-
ment of the funds in the hands of the building contractor.

2. SAME—*Assignment Did Not Create Chattel Mortgage.* Such an as-
signment is not a chattel mortgage requiring registration to be valid
against the claim of another creditor proceeding by writ of garnish-
ment.

Appeal from Montgomery district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed January 8, 1916. Reversed.

*W. E. Ziegler*, of Coffeyville, *Edgar C. Ellis, Hale H. Cook*,
and *Raymond G. Barnett*, all of Kansas City, Mo., for the ap-
pellant.

*J. H. Keith, A. R. Lamb*, and *W. S. Keith*, all of Coffeyville,
for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, W. C. Hall, commenced this ac-
tion on October 12, 1912, against The Kansas City Terra Cotta
Company to recover on the defendant's promissory note, and
on the same day caused garnishment proceedings to be served
on Albert Neville, a Coffeyville contractor. Neville, the gar-
nishee, answered, and alleged that on July 26, 1912, he had
entered into a written contract with the defendant, The Kan-
sas City Terra Cotta Company, for certain materials to be de-
livered to him at Coffeyville on or before September 20, 1912.
Other allegations covered failure of the terra cotta company
to comply in full with its contract, consequent damages to gar-
nishee, including freight bills which he was compelled to pay
for the defendant, etc. He also pleaded that on November 16,
1912, he had been notified by The Southwest National Bank of

Kansas City, Mo., that the claim of the terra cotta company had been assigned to it on September 16, 1912, and advising him that all the proceeds of his contract should be paid to the bank. He also prayed that the bank should be impleaded and required to set up its rights, and that he be protected.

By leave of court, the bank filed its answer and cross-petition; and by agreement of parties, and with the approval of the court, Neville, the garnishee, was permitted to pay into court a sum of money and was discharged. This action thereupon proceeded between the plaintiff and the interpleading bank.

Incorporated in the terms of the terra cotta company's note of September 16, 1912, to the bank was the following:

"Having deposited with said bank as collateral security (being the legal holder) for the payment thereof, and also for all other present or future demands or claims of any kind of the said bank against the undersigned due or not due (Give brief description or summary of collateral here) Sundry contracts which the makers and endorsers hereof hereby authorize said bank, or its President or Cashier, to sell without notice at public or private sale at option of said bank or its assigns (and with the right to said bank or its assigns to be the purchaser of all or any part of said collateral, or any such sale), in case of non-performance of the promise, applying the net proceeds to the payment of the note, including, interest, and accounting for the surplus, if any, and in case of deficiency, promise to pay said bank, or its order, the amount thereof forthwith after such sale, with interest as provided above; and in case of any exchange of or additions to, the collaterals above named, the provision of this note shall extend to such new or additional collaterals. The margin of collaterals to be kept satisfactory to said bank, or in default thereof, the note to become due and payable."

The instrument purporting to assign the Neville contract to the bank professed on its face to be an "Assignment of Collateral, Contracts for Work and Material." In substance it recited that the terra cotta company was a customer of the bank, indebted to it, and contemplated further indebtedness, and to secure the payment thereof, the debtor set over to the bank certain items including the Neville contract; and continued thus:

"The purpose of this assignment is to transfer to assignee the net contract price, that is to say, the sums due and to accrue upon this contract to assignor over and above necessary expenditures of like nature at the point of construction—no allowances for outlays or expenditures at point of manufacture to be made except upon written consent of assignee.

Hall v. Terra Cotta Co.

"To avoid embarrassment to business of assignor and to relators of assignor with contracting parties, assignor is hereby made agent of assignee, to receive and receipt for sums due and payable and to become due and payable upon the above assigned items; however, same to be for account and use of assignee, and all sums so collected by said assignor to be forthwith turned over to assignee for credit in pursuance of the purpose above stated. Provided however, that this agency is to be subject to revocation by assignee and right of accounting at any and all times is expressly reserved."

The district court found that the terra cotta company was indebted to the bank, and that for the purpose of securing the same and to procure a further loan which was then made the contract between Neville and the terra cotta company was assigned and delivered to the bank on September 16, 1912; that the bank did not notify Neville until about a month after this action and garnishment were begun. The court's judgment, in part, proceeds thus:

"The court further finds that said assignment, taken and considered in connection with a number of similar transactions between the said Terra Cotta Company and the bank, and their method of doing business and course of dealing, as shown by the evidence, is and was a conveyance intended to operate as a mortgage of personal property and that it was not accompanied by a delivery to the bank of the property nor was it followed by any actual or continued change of possession of the property covered by the conveyance.

"The court further finds that neither said assignment from said Terra Cotta Company to said bank, nor any copy thereof was ever filed or made of record in the office of the register of deeds of Montgomery county, Kansas, or elsewhere, and that the said assignment is void as against the plaintiff, W. C. Hall."

From this judgment and its incidents the bank appeals.

The general rule is that garnishment, like other proceedings *in invitum*, only affects the actual property, money, credits and effects of the debtor in the hands of the garnishee, and the rule relating to *bona fide* holders or purchasers without notice has no application. (*Investment Co. v. Jones*, 2 Kan. App. 638, 42 Pac. 935; *Bradley v. Byerley*, 3 Kan. App. 357, 42 Pac. 930; *Johnson v. Brant*, 38 Kan. 754, 17 Pac. 794; *Lumber Co. v. Trust Co.*, 54 Kan. 124, 37 Pac. 983; *Bank v. Bank*, 80 Kan. 205, 207, 101 Pac. 1005; *Mason v. Saunders*, 89 Kan. 300, 131 Pac. 562.)

In 20 Cyc. 1012-1017, it is said:

"Where the principal defendant has made a valid assignment of the garnishee's indebtedness, or conveyance of the property in his posses-

sion belonging to such defendant, before the service of the summons upon the garnishee, the latter can not be charged on account of such debt or property.

"The above rule is especially applicable to bills of exchange, promissory notes, and other evidences of indebtedness, and where such paper is assigned or transferred in good faith before the drawer, maker, or indorser thereof is served in garnishment proceedings by a creditor of the payee, or of the last holder thereof, the rights of the assignee or transferee are not affected by such proceedings.

"In the absence of statutory provision prescribing the mode of assignment, no particular mode or form is necessary to effect a valid assignment of property, claims, or debts so as to defeat garnishment proceedings by a creditor of the assignor. If the intent of the parties to effect an assignment be clearly established, that is sufficient, and the assignment may be in the form of an agreement or order or any other instrument which the parties may see fit to use for that purpose. . . . The rule is sometimes broadly stated that an assignment is not complete so as to defeat proceedings in garnishment until the garnishee is notified thereof; however, this rule seems to be subject to limitations; thus as between assignor and assignee, it is not necessary to the validity of an assignment that the garnishee be notified thereof; and the assignment will likewise be complete as against creditors of the assignor instituting garnishment proceedings after assignment and before notice of the assignment to the garnishee, provided that notice of the assignment be given to the garnishee in time to permit him to disclose the assignment in his answer to the garnishee process."

The district court treated the assignment of the contract between the terra cotta company and Neville as a chattel mortgage. If it were treated as a mortgage of the contract, then the possession of the contract by the bank would obviate all necessity for its registration. Nothing is more common than the advancement of funds to contractors and manufacturers, and while banks with proper prudence usually take more tangible security than the potential and possible future profits of the pending contracts of the borrowers, yet there is no impropriety in taking an assignment of the latter also; nor does the statute require such assignments to be recorded.

When the borrower thus assigns his contract or the possible profits of his contract in good faith, such assignment should be respected. Nor can a later garnishing creditor justly complain. The garnishment process only reaches the property, assets and credits of the debtor, and not that of which the debtor was formerly the owner nor that which he has lawfully assigned to a third party.

This view seems to be amply sustained by the authorities. In *James Clark & Co. v. Wiss & Ballard*, 34 Kan. 553, 9 Pac. 281, it was held that "a debt due for goods sold and delivered, and resting for evidence on a book account, may be assigned, and such assignment is valid if made by mere delivery." (p. 555.) In the case at bar, the debt due from Neville to the terra cotta company for goods sold and delivered and resting for evidence on a written contract was assigned to the bank, and such assignment must likewise be valid though made only by mere delivery of the contract.

In *Bank v. Bank*, 80 Kan. 205, 101 Pac. 1005, it was said:

"We understand that when personal property is pledged the pledgee acquires a right thereto which is superior to any right that can thereafter be given by the pledgor or be acquired by a subsequent attachment issued in an action against him. (22 A. & E. Encycl. of L. 867, 868, and notes; *Bank v. Harkness*, 42 W. Va. 156.) The assignment and delivery of the certificate constitutes a delivery of the property represented thereby. (22 A. & E. Encycl. of L. 956.) In the second edition of Jones on Pledges and Collateral Security, section 37, it is said:

"'A delivery of a document of title, which serves to put the pledgee in possession of the goods, is equivalent to an actual delivery of them.'

"This question was discussed and authorities were collected in the case of *Bank v. Harkness*, 42 W. Va. 156. (See, also, *Continental Nat. Bank v. Eliot Nat. Bank*, 7 Fed. 369.) The great weight of authority seems to be that this kind of delivery is sufficient to constitute a pledge. A completed pledge has the effect of depriving the pledgor of all control over the property, as far as the interest of the pledgee is concerned. He can neither sell nor encumber it so as to dispose of or impair the rights of the pledgee therein. It seems clear that what he can not do personally can not be done by a writ of attachment. Generally, the rule has been that an attachment takes only the interest which the owner has when the writ is levied." (p. 207.)

The latter case is also pertinent on the question of the necessity for registration or other notice. It was said:

"The fact that the attachment creditor acted in good faith and without notice of the pledge is not important, as there is no law requiring pledges to be recorded." (p. 208.)

It is urged that the assignment of this contract was only part of a larger transaction in which the terra cotta company mortgaged its entire plant and assets to the bank, and since such mortgage was unrecorded, it and all its incidents, including this assignment, are void against the plaintiff armed with a writ of garnishment. This view did not meet the approval of

this court in the Clark case, *supra,* where the assignee of the book accounts prevailed against the garnisheeing creditor, notwithstanding the defects in the mortgage under which the assignee also claimed.

Again, it is urged that under the assignment, the bank was only to receive whatever net profit might result from the Neville contract, and there was none such at the time of the assignment, consequently nothing was conveyed to the bank. To this there appears to be two answers: (1) Neville has paid a sum of money into court, which seems to settle the question as to whether he owed the terra cotta company. (2) The instruments from the terra cotta company which we have set out above do not justify the interpretation that only the net profits of the Neville contract were assigned to the bank. The pertinent clause is:

"The purpose of this assignment is to transfer to assignee the net contract price, that is to say, the sums due and to accrue upon this contract to assignor over and above necessary expenditures of like nature at the point of construction—no allowances for outlays or expenditures at point of manufacture to be made except upon written consent of assignee."

The "point of construction" was Coffeyville, and the "point of manufacture" was Kansas city. The net proceeds thus included the cost of manufacture, so that the assignment, fairly read, covered much more than mere possible net profits. It virtually covered the value of the goods furnished, less possible charges at Coffeyville.

This brings us to the concluding question, and, indeed, to the only question which presents any serious difficulty in this case. We have said that if this conveyance were treated as a chattel mortgage, the physical possession of the contract by the bank would obviate the necessity of its registration. The law is equally well settled that if it were treated as a pledge, neither registration nor notice would be necessary to enforce it. But the appellee, with much force and show of authorities, insists that the appellant can not rely on these settled principles because the bank did not have exclusive control over the contract and its pertinent incidents; that the bank left the terra cotta company in control; that the bank disavowed any responsibility to carry out the contract assigned to it; that the terra cotta company afterwards changed and reduced the

contract price with Neville without the knowledge and consent of the bank; that it adopted the assignor as its agent to receive and receipt for sums due and to become due under the contract, requiring it to account to the assignee for the moneys thus collected.

Does this situation create any distinction recognized by the precedents? As a chattel mortgage it undoubtedly would do so, for however binding such a mortgage would be between the parties, it would not affect third parties where the mortgage was not recorded and the mortgagee was not in exclusive possession. (*Swiggett v. Dodson*, 38 Kan. 702, 17 Pac. 594; *Boot & Shoe Co. v. Ware*, 47 Kan. 483, 28 Kan. 159; *Geiser v. Murray*, 84 Kan. 450, 114 Pac. 1046.) The same necessity as to possession applies to pledges; the pledgee must secure and maintain exclusive control of the thing pledged. (*Raper v. Harrison*, 37 Kan. 243, 245, 15 Pac. 219; *Gray v. Doty*, 77 Kan. 446, 448, 94 Pac. 1008; *Atkinson v. Bush*, 91 Kan. 860, 139 Pac. 393; 5 R. C. L. 387.)

But in our opinion the assignment was neither a chattel mortgage nor a pledge. It was simply what it purported to be—an assignment of a sum or sums of money due and to become due. There was nothing about the transaction which was unusual or against public policy. This general subject is one which might well be regulated by statute but so far it has been left free to develop in the usual course of modern business. (*Cameron, Hull & Co. v. Marvin*, 26 Kan. 612, syl. ¶¶ 4, 5; *Columbia Finance & Trust Co. v. First Nat. Bank*, 116 Ky. 364, 76 S. W. 156; *Thayer v. Daniels*, 113 Mass. 129; *Whittredge v. Sweetser*, 189 Mass. 45, 75 N. E. 222; *Muir v. Schenck*, 3 Hill [N. Y. Supr. Ct.] 228; *Niles v. Mathusa*, 162 N. Y. 546, 57 N. E. 184; *Central Trust Co. v. West India Imp. Co.*, 169 N. Y. 314, 62 N. E. 387; *U. States v. Vaughan*, 3 Binney (Pa.) 394; *Downer v. South Royalton Bank, Chamberlain et al. Claimants*, 39 Vt. 25; *Tingle v. Fisher*, 20 W. Va. 497; *Bank v. Harkness*, 42 W. Va. 156, 24 S. E. 548; 4 Cyc. 17, 20.)

We do not think the fact that the terra cotta company was made the agent of the bank to collect the proceeds of the contract can affect the validity of the assignment. Neither can the later modification of the contract by remitting $330 of the contract price. That deduction in plain terms recognized

that "this money is subject to the order of the court." Recurring to the proposition first laid down, that the garnisheeing creditor can reach only the property of the defendant in the hands of its debtor, the plaintiff could not reach or attach that which had already passed by lawful assignment, and this necessitates a reversal of the judgment with instructions to render judgment for the interpleader.