No. 21,020.

THE PIQUA STATE BANK, *Appellant,* V. B. B. BRANNUM et al., *Defendants,* and BEN SICKA, Interpleader, *Appellees.*

SYLLABUS BY THE COURT.

1. PLEDGE—*Personal Property—Pledgee in Possession—Subsequent Chattel Mortgage—Priorities.* A contractor cut, baled, and stored hay for the owner of the hay. The hay was stored in a locked barn, rented by the contractor from a third person, the key of which the contractor kept in his possession or under his control. The owner agreed that the contractor might hold the hay as security for money due him. *Held,* no additional delivery of the hay and no change in the appearance of possession were necessary to consummate the pledge as against a subsequent mortgagee of the hay.

2. TRIAL—*No Prejudicial Error.* Instructions to the jury considered, and held not to be prejudicially erroneous or misleading.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed May 11, 1918. Affirmed.

*R. E. Cullison, Frank R. Forrest,* and *B. E. Clifford,* all of Iola, for the appellant.

*F. J. Oyler,* of Iola, and *George Stephenson,* of Yates Center, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one of replevin, brought by a chattel mortgagee to recover baled hay. The interpleader, Ben Sicka, who claimed the hay under a pledge antedating the mortgage, recovered. The plaintiff appeals.

Sicka cut, baled, and stored the hay, under contract with the defendant, Brannum. The hay was stored in a barn belonging to Sicka's father, for which Sicka paid rent. Sicka claimed that after the hay on certain land had been put up, Brannum desired him to go on and put up the hay on other land. He refused to do so until he was paid for what he had done. Brannum said he would turn the hay in the barn over to Sicka to hold for his service, Sicka to get his money as the hay was shipped out. This was agreed to. The contract to put up hay was made in the summer of 1914. The pledge was made on September 30, 1914. There was but one key to

the barn, and Sicka had charge of it. There were separate places for hay in the barn. In one of them Sicka's father and brother kept some hay, and part of the time his father had the key. There was evidence that, on one occasion, Brannum and the plaintiff's cashier visited the barn, found the key under a rock lying on one of the sills of the structure, opened the door, went in, and inspected the hay. Neither Brannum nor any representative of the plaintiff, however, ever had custody of the key, or authorized possession of it. After the pledge the lock was not changed nor anything else done to change the appearance of possession. The hay was held by Sicka, waiting for a favorable market, which did not present itself before the hay was replevined. On October 6, 1914, Brannum mortgaged the hay to the plaintiff. Brannum was sent to the penitentiary for shooting a man and his deposition was taken. He made common cause with the plaintiff, and denied the pledge *in toto*. He said he rented the barn, and that he paid Sicka the money he received from the bank when the mortgage was given. The plaintiff's cashier testified that before making the loan to Brannum he inquired of Sicka the quantity and quality of the hay in the barn, and was told there were 150 to 160 tons of No. 2 hay; that he informed Sicka that Brannum had applied for a loan, and that he was figuring on taking a mortgage from Brannum; that he told Sicka the purpose of the Brannum loan, and that Sicka said nothing about having possession of the hay. Sicka denied positively that the plaintiff's cashier told him of Brannum's application for the loan, or that the plaintiff was considering taking a mortgage on the hay, and testified he knew nothing of the plaintiff's mortgage until about October 20. Sicka further testified that on September 30, the day of the pledge, he told the plaintiff's cashier that Brannum had turned the hay over, and that the hay was in the barn.

The veracity of witnesses was a matter for the jury to estimate, conflicts in the testimony were matters for the jury to solve, and the only meritorious question is whether or not the cause was fairly submitted to the jury.

The principal contention of the plaintiff is that an actual delivery of the property by the pledgor to the pledgee, pursuant to the pledge, evidenced by some change in the appear-

ance of possession, was essential.  The purpose of possession in a pledgee is to afford notice of his right to third persons who might deal with the pledgor on the strength of the pledgor's possession.  When the pledgor has possession, there must be delivery to the pledgee.  But delivery has no function to perform when the pledgee already has possession, and when the contract giving Sicka the right to hold the hay was added to his possession previously acquired, the pledge was complete.  It was necessary that Sicka's possession should present an appearance sufficient to give fair notice of his rights. This requirement was fully met by keeping the hay locked in the barn which he rented from a third person, and by keeping control of the key.  But, having possession of this character, it was not necessary that he do anything more to consummate the pledge.

Complaint is made because the jury were not instructed that it was essential Sicka should hold the hay "adversely" to Brannum.  In the case of *Atkinson v. Bush,* 91 Kan. 860, 139 Pac. 393, this court said:

"To constitute a valid pledge of personal property as security for a debt, it is essential that there be an actual delivery of the property by the pledgor to the pledgee, and the pledgee must thereafter hold possession of the pledge openly and adversely to the pledgor." (p. 863.)

It is not always necessary that a particular word employed by this court in a discussion of legal principles should be used in an instruction to a jury with reference to the same subject. In this instance, Sicka's possession of the hay became adverse to Brannum if the agreement that he might hold the hay were made and acted on.  Before that he held the hay for Brannum.  After that he held the hay for himself.  Possession of such open and exclusive character as to warn the plaintiff was a different matter.  Consequently all that was necessary was to submit to the jury the question of fact, whether or not the agreement were made and acted on, and that was done.

When instructing the jury generally on the subject of estoppel by silence the court used the common expression, "when a person . . . stands by."  In another instruction the general principles previously stated were applied to the evidence, and it was said that if Sicka knew the mortgage was being made under the belief that the hay was free from pledge,

and being present, with such notice and knowledge, suppressed or failed to assert his claim and allowed the mortgage to be made, he would be estopped. The plaintiff's evidence did not fix the date on which the plaintiff's cashier told Sicka of the contemplated loan to Brannum as the date on which the chattel mortgage was given, and it is said the instruction practically precluded recovery by the plaintiff on the ground of waiver and estoppel.

The general instruction was correct, and was so framed as to give the jury a clear notion of the principles governing the controversy. As remarked in 10 R. C. L. 694, the expression "standing by" has lost its primary signification of actual presence or participation. This is true of its popular as well as its legal meaning. The other instruction is open to criticism, but the court is of the opinion it was not prejudicially erroneous. There were two perfectly distinct claims on the hay, one by pledge and the other by mortgage. If Sicka's evidence relating to the pledge were substantially true, leaving out of account the information he claimed he gave the plaintiff's cashier concerning the pledge, Sicka was entitled to the hay, unless he waived his lien. Sicka denied that he was informed of the contemplated Brannum mortgage, and his case before the jury rested, not on whether his duty to speak arose at one time or at another, but on which story should be believed. The instructions as a whole are open to the interpretation that "being present" directed attention to the opportunity which Sicka had to disclose his pledge, and so prevent loss to the plaintiff. So interpreted, the instruction was not erroneous, and under the circumstances stated the court is satisfied the jury were not misled.

An inaccuracy in the court's statement of the interpleader's claim was without detriment to the plaintiff. There was no evidence that the hay which was pledged was mingled with other hay in such a way as to lose its identity.

The judgment of the district court is affirmed.