CENTRAL TRACTOR & EQUIPMENT CO., Appellant, v.
BETZ, et al, Respondents.

(260 N. W. 269.)

(File No. 7704.   Opinion filed April 16, 1935.)

*Bailey & Voorhees* and *M. T. Woods,* all of Sioux Falls, for Appellant.

*Blaine Simons,* of Sioux Falls, for Respondent.

WARREN, P. J.   The defendant, Paul Betz, entered into a contract with the state of South Dakota for the construction of a certain highway in Lincoln county, S. D.   The Western Surety Company executed a bond guaranteeing the completion of Betz' contract.   The defendant failed and was unable to pay debts incurred in the construction of said highway.   The Western Surety Company as surety has had to pay $7,545.65 for materials and labor.   Of this amount said surety company has received $4,901.14 from the state.   It has paid out $2,644.60 without being reimbursed therefor.   The state under admitted facts still holds a balance due defendant for work in the sum of $1,725.09 which the surety company claims it is entitled to have applied upon the balance due for money paid out and for which it has not been reimbursed.

The plaintiff, Central Tractor & Equipment Company, sold an elevator grader to Betz and seeks to recover from the state as garnishee the sum of $1,370, and interest upon five promissory notes given to plaintiff by defendant Betz.   Garnishment proceedings were commenced to collect the default judgment, and the Western Surety Company intervened in the garnishment proceedings, saying that it, as surety, is entitled to the money in the hands of the state.

At the close of the trial the court dismissed and vacated the garnishment proceedings so far as it affected the sum of $1,725.09 due under the contract between Betz and the South Dakota Highway Commission, and ordered that the intervener, Western Surety Company, recover from the state of South Dakota the sum of $1,725.09.   Plaintiff's motion for a new trial was denied, and plaintiff has appealed from said order and judgment.

The state of South Dakota, through the state highway commission, entered into a contract in writing with one Paul Betz whereby, in substance, he agreed to furnish all the materials, appliances, tools, food, and labor of every kind and to construct a portion of a state trunk highway in Lincoln county.   In said contract he agreed to pay all just claims for materials, supplies,

tools, appliances, food, and labor, and all other just claims incurred by him or any of his subcontractors in carrying out the provisions of his contract, and further agreed that the contract bond should be held to cover all such claims. The contract bond in substance reiterates his duties and obligations just stated. At the time of the execution of said contract and contract bond there was also executed a bond application and assignment which becomes material in the consideration of the questions before us. The material parts thereof are as follows: " * * * That in further consideration of the execution of said bond, the undersigned hereby assigns, transfers and conveys to the company all the deferred payments and retained percentages and any and all moneys and properties that may be due and payable to the undersigned at the time of any breach or default in said contract. * * * "

It is respondent's contention that it as surety has a prior right to the funds in the hands of the state; that it has been compelled to pay for materials and labor incurred under Betz' contract; that this right dates back to the time it became surety and is not subject to defeat by garnishment or attachment by one having an inferior equity.

Appellant contends that none of Betz' creditors had any lien or claim upon any fund to which the intervener could be subrogated; that they had a claim against only the principal contractor and the surety. An examination of the record discloses the fact that some time in December, 1932, the surety company (the intervener) collected money from the state highway department due Betz. Up to that time money had been paid over to Betz upon estimates. As early as in November, 1932, the respondent was compelled to pay certain material and labor claims which had been submitted to it on account of Betz being unable to pay for work and materials furnished on the Lincoln county project. Considerable money was paid over by the respondent from then on for labor and materials furnished because of Betz' inability to meet said past-due payments. Under the terms of the contract between the state and Betz and the bond given for the faithful performance of such contract the respondent was liable, as we see it to those furnishing work and materials on the project whose bills were presented in the form of claims after Betz was unable to meet the obligations. This seems to be the well-established law in this state under a well-considered

line of authorities, and we think the bond is sufficiently definite to protect the laborers and materialmen, and would cover the items of the parties who demanded payment from respondent. In Thopson Yards Inc. v. Van Nice, 59 S. D. 306, 239 N. W. 753, 755, we reviewed a similar situation and held that the bond was sufficiently definite to pay the claims of third parties. In that case we said: "If a contractor's bond is sufficiently definite and precise to impose a liability to pay the claims of third parties for labor and materials, such bond furnished to a state or a municipality is an enforceable obligation, irrespective of the existence of a statute, and affords a right of action to a person furnishing materials or performing labor. Anderson Lumber Co. v. National Surety Company, 49 S. D. 235, 207 N. W. 53; Western Material Co. v. Enke et al, 56 S. D. 302, 228 N. W. 385; People's Lumber Co. v. Gillard, 136 Cal. 55, 68 P. 576; Builders' Lumber & Supply Co. v. Chicago Bonding & Surety Co., 167 Wis. 167, 166 N. W. 320; Puget Sound State Bank v. Gallucci, 82 Wash. 445, 144 P. 698, Ann. Cas. 1916A, 767; Williams v. Markland, 15 Ind. App. 669, 44 N. E. 562; Cove Irrigation Dist. v. Am. Surety Co. of N. Y. (C. C. A.) 42 F. (2d) 957."

Under the decisions of our court above referred to the surety company was helpless upon the presentation of claims for payment. It was forced to acknowledge that there had been a breach of the contract in that Betz had not paid the items when due, and it therefore assumed its contractual duties and paid the claims presented.

■■ It is argued by the appellant that the funds remaining in the hands of the state are "free funds" and that it is entitled to them by virtue of its garnishment proceedings. Respondent urges that the funds remaining in the hands of the state are not "free funds," and cites authorities which it claims support the theory of law known as subrogation, and further insists that the funds were assigned entitling the surety company to be reimbursed for money paid out pursuant to its obligation under the contract for the defendant contractor Betz; that it is entitled to have paid over to it the funds in the hands of the state by virtue of said assignment entered into at the time of the execution of the bond.

An examination of many authorities discloses that many courts have permitted recovery by the surety on the theory of subrogation, other authorities holding that where there has been an

attempt at the assignment of the funds a recovery should be permitted. In other cases we find recovery upon the theory that the contract creates an equitable lien in favor of the surety. Upon the subrogation theory, see Barrett Bros. Co. v. St. Louis County, 165 Minn. 158, 206 N. W. 49; Monona County v. O'Connor, 205 Iowa 1119, 215 N. W. 803; Cox v. New England Equitable Insurance Company (C. C. A.) 247 F. 955. A number of courts follow and base their decisions upon the theory of assignment. See Hall v. Kansas City Terra Cotta Co., 97 Kan. 103, 154 P. 210, L. R. A. 1916D, 361, Ann. Cas. 1918D, 605; Graham v. So. Ry. Co., 173 Ga. 573, 161 S. E. 125, 80 A. L. R. 407, and annotations on page 413.

It is perhaps true that under our law the laborers and materialmen paid by the surety did not have any right against the money in the hands of the state, but were merely in a position of general creditors of Betz, and the right of the surety cannot, therefore, be based on the theory of subrogation. However, we believe the assignment to be material, and sufficient upon which to sustain the surety's prior right to the fund. The assignment includes all "deferred payments and retained percentages." There were no "retained percentages," but it seems to us that the term "deferred payments" is broad enough to include any money in the hands of the state due the contractor and unpaid. It seems apparent that the use of the term "deferred payments" in this instrument must mean something other than "retained percentages" due to the fact that both terms were used in the said instrument. If the intention was only to assign "retained percentages" there would have been no object in the use of the term "deferred payments." The term "deferred payments" as used in this instrument is in our opinion broad enough to include the money now in the hands of the state and the right to which is here in dispute. Whether the instrument is sufficient to constitute an equitable assignment of these funds we express no opinion. However, it is sufficient in our opinion to indicate an intention to make these funds in the hands of the state security for the surety company. An "express executory contract, in writing, whereby the contracting party sufficiently indicates an intention to make some particular property * * * or fund, therein described or identified, a security for a debt or other obligation, * * * creates an equitable lien upon the property so indicated."

Savings Bank v. Mundt, 47 S. D. 161, 197 N. W. 156, 158; American Surety Co. v. Finletter (C. C. A.) 274 F. 152. See, also, Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865; Pomeroy's Equity Jurisprudence (4th Ed.) 1235.

We are inclined to the theory that the language used in the instruments attempting to assign the funds shows a clear intention that the money in the hands of the state constitutes a security for the surety in the event that the surety company was compelled to pay out money under its contract of suretyship and that the right of the surety relates back to the time of the execution of the contract. The surety having contributed to the completion of the contract with the state, it should have a superior claim to the general creditor.

We have carefully considered the record and have examined the authorities presented by appellant; they are not in harmony with the principles announced governing the facts before us. There being no error in the record, the judgment of the court below must be affirmed.

The judgment and order appealed from are affirmed.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.